SHIRLEY ANNE TIDWELL et al.

*v.*

ERNEST WALDEN et al.

*(Knoxville,* September Term, 1959.)

Opinion filed December 11, 1959.

GRIFFITH & DOSSETT, LaFollette, for appellants.

TROUTMAN & TROUTMAN, LaFollette, for appellees.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This is an appeal from the Circuit Court of Campbell County in a workmen's compensation case wherein the trial judge dismissed the plaintiffs' suit. An appeal was prayed and granted to this Court, following the denial of a motion for a new trial.

A correct statement of the facts which gave rise to the petition for compensation appears in the appellants' brief, as follows:

"In this case the appellants, Shirley Anne Tidwell and Fletcher Wayne Tidwell, hereinafter called the petitioners filed suit by their mother and Next Friend, Janie Tidwell, in the Circuit Court of Campbell County, Tennessee, on December 5, 1957, against the appellees, Ernest Walden and William Walden, as partners, hereinafter referred to as defendants, to recover workmen's compensation for the death of their father, Grant Tidwell.

"In their petition, they averred that on September 30, 1957, their said father was employed as a coal miner by the defendants, who were subject to the Workmen's Compensation Law, and that on said date, while in the course of his duty as such employee, their said father, Grant Tidwell, was accidentlly killed by a' rock and slate fall. They alleged that defendants had actual knowledge of the accident and promised to pay the funeral expenses of the said Grant Tidwell and make a few payments for the use of the petitioners.

"They averred that their said father earned at least $40.00 weekly, and that the petitioner, Shirley Anne Tidwell, was 15 years of age, and Fletcher Wayne Tidwell 8 years of age.

"On February 5, 1958, defendants answered, saying that on and before September 30, 1957, said Grant Tidwell was a partner with the defendants and four other persons, and admitted that this partnership possibly employed five or more employees, in addition to the partners, on September 30, 1957.

"They admitted the death of Grant Tidwell, and said that it was possibly true that some gratuity was made after the death of Grant Tidwell, but denied that they promised to pay his funeral expenses. They admitted that on or about July 17, 1957, Grant Tidwell was employed by them and three other partners at an hourly rate of $1.00 an hour; but averred that he thereafter assumed his place as a full partner in the Blue Ridge Coal Company and shared the earnings with the other partners until he was accidently killed on September 30, 1957. The parent and child relationship was admitted. They denied that they made any pay-

ments for the use of the petitioners or that they made any attempt to settle a claim under the Workmen's Compensation Law.

"On April 1, 1958, Honorable William I. Davis, Jr., Circuit Judge, heard the case at which time the petitioners submitted their brief and the defendants were allowed 15 days to file reply brief, and petitioners 5 additional days to respond thereto.

"On May 27, 1958, the Court fully and finally heard the case and dismissed the petition upon the sole ground that the preponderance of the testimony was to the effect that the said Grant Tidwell was a partner of the defendants; and allowed the petitioners 30 days from the entry of the judgment to file their motion for a new trial."

While petitioners assign a number of errors they collectively raise one issue, to wit, was the deceased an employee of the defendants or a member of the partnership composed of Ernest Walden and others?

The trial judge dismissed the petition based upon the following finding of facts:

"The issue for determination in this compensation case is whether deceased Grant (Doc) Tidwell was at the time of his injury and death on Sept. 30, 1957 an employee of defendants.

"Defendants prior to 1957 had operated a coal mine as Walden Bros. under a lease in their names. It developed that they could not obtain workmen's compensation insurance coverage and they quit operating. The latter part of 1956 or near the early part of 1957

the defendants, together with Brannon, Smiddy, Hembree, Savage and Ayers entered into a mutual agreement for the removal and marketing of coal from lands under lease. Under the terms of said agreement, joint venture, mutual understanding, partnership or gangworking association the defendants permitted their equipment to be used in mining the coal for a stipulated charge. Each member had equal authority to hire employees and to permit other persons to become a partner or member of the association, though they consulted with each other relative thereto. Ernest Walden was designated by the others to keep the books. By the terms of said agreement or understanding the expenses of removing and marketing the coal was determined, deducted from the proceeds of the coal sales and the balance (profits) divided between the parties to or members of the association or partnership in accordance with the amount each had worked during the period. It was further a provision of said undertaking and agreement that any member thereof could sever his connection with the association or partnership when he chose, but he would thereby forego further income from or interest in the venture. No member had the right to control activities of other members in the means and methods of their work. Under these provisions the defendants and others named operated as Blue Ridge Coal Co.

''Deceased was recognized as a good coal miner, one such as could materially increase the output of coal. Ayers had dropped out of the picture and deceased was told by Brannon to come over to the mine. Deceased was employed by the association or partnership about July 15, 1957 at $1.00 per hour for which wage he was

710·

to prepare a place in the mine to work later as a member of the association or partnership. About Sept. 16, 1957 deceased became a member of said partnership or association with full knowledge of its provisions, conditions, organization, his attendant rights and liabilities, and his status therein and as a member thereof. Deceased worked as a member of said partnership or association sharing the profits thereof, until Sept. 30, 1957 when he was killed by a slate fall in the mine operated as above outlined.

"In view of the foregoing findings of facts, which it is believed appear by preponderance of the evidence, it is believed deceased was not an 'Employee' within the purview of the Workmen's Compensation Act [T.C.A. sec. 50-901 et seq.] (*Gebers v. Murfreesboro, etc., Co. et al.,* 159 Tenn. 51 [15 S.W.2d 737]) and therefore petitioners not entitled to recover. Had he been such an 'Employee' then petitioners would be entitled to recover the full statutory award.

"Though such a mutual-income-producing organization may have the effect of precluding its members and participants from the benefits enjoyed by persons of 'Employee' status, said members are not to be condemned for their desire to labor, earn, and feed their families by working at a job, which, but for that very same organization or joint undertaking they would probably be denied the fulfillment of that desire."

■ Regrettable as it may be that the dependents of the deceased workman are denied the benefit of his support as provided by our Workmen's Compensation Act, we feel that the evidence supports the finding by the trial court.

██ Contention is made that the alleged partnership, being based upon an oral agreement, should be established "by clear and convincing" evidence. The authorities clearly support this contention. In other words, if the issue is doubtful, it should be resolved in favor of the injured workman. *Kamarad v. Parkes*, 201 Tenn. 566, 300 S.W.2d 922. But where there is material evidence to sustain the trial judge, his finding is not subject to review on appeal, unless his finding is clearly an error of law. *Block Coal & Coke Co. v. Gibson*, 199 Tenn. 116, 285 S.W.2d 112, and cases cited therein.

The defense interposed in this case that the deceased was a partner in the business was well pleaded, the parties having entered into a *bona fide* agreement to that effect. We think the evidence shows that it was such an agreement. But for this "mutual-income-producing" organization (the same being so denominated in the last paragraph of the trial judge's finding) the deceased had no opportunity to earn a living for his family.

Upon full consideration of the facts, and the argument by counsel in support of the assignments of error, we are constrained to affirm the judgment of the trial court. It is so ordered.