# IN THE COURT OF APPEALS OF <u>TENNESSEE</u>
## AT NASHVILLE

FILED

**December 10, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

GUY BEATY,                    )

                                  )

       Plaintiff/Appellee,      )

                                  )   Fentress Circuit

                                  )   No. 6969

VS.                        )

                                  )   Appeal No.

                                  )   01A01-9701-CV-00046

BOBBY McGRAW and       )

STEVE BROWN,          )

                                  )

       Defendants/Appellants.   )

APPEAL FROM THE CIRCUIT COURT
FOR FENTRESS COUNTY
AT JAMESTOWN, TENNESSEE

THE HONORABLE CONRAD E. TROUTMAN, JUDGE

For Plaintiff/Appellee:

John D. Agee
Cooley, Cooley & Agee
Kingston, Tennessee

For Defendants/Appellants:

James P. Smith, Jr.
Crossville, Tennessee

Patrick T. Phillips
Knoxville, Tennessee

# AFFIRMED IN PART; VACATED IN PART
# AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This appeal involves a dispute over the sale and repossession of a drilling rig. The seller filed suit against the purchasers in the Fentress County General Sessions Court seeking immediate possession of the rig and damages. Following the purchasers' de novo appeal, the Circuit Court for Fentress County awarded the seller possession of the rig but held that the purchasers could recover the rig by paying the seller the outstanding balance of the purchase price. On the purchasers' appeal, this court held that the seller was entitled to a judgment for the unpaid purchase price but that the seller had not been entitled to repossess the rig. Accordingly, this court remanded the case to determine the purchasers' damages for the seller's wrongful detention of the rig. The purchasers asserted on remand that the appropriate measure of their damages had already been determined in a similar Roane County proceeding between the same parties. The trial court disagreed and awarded the purchasers $26,021 for the seller's wrongful detention of the rig and $8,000 in attorney's fees under Tenn. Code Ann. § 29-30-110 (1980). All parties have appealed. The purchasers assert that the trial court should have used the same measure of damages used in the Roane County proceeding and that they should have been awarded exemplary damages under Tenn. Code Ann. § 29-30-210 (1980). The seller asserts that the evidence preponderates against the trial court's damage award and that the purchasers were not entitled to recover their attorney's fees. We have determined that the trial court correctly calculated the purchasers' damages but that the case must be remanded for further consideration of the award of attorney's fees to the purchasers.

## I.

In January 1986, Three G's Drilling Company sold a 1978 Drilltech Type SME drilling rig to Bobby McGraw and Steve Brown for $50,000. Messrs. McGraw and Brown paid $25,000 down and agreed to pay the balance in four $6,250 installments due between April 1, 1986 and January 1, 1987. Messrs. McGraw and Brown took possession of the rig but failed to execute a written contract or to make any of their payments. On March 13, 1992, Guy Beaty, one of the partners in Three G's Drilling Company, filed suit in the Roane County General Sessions Court seeking immediate possession of the rig. The general sessions court awarded Mr. Beaty a writ of immediate possession, and sheriff's deputies took possession of the rig and turned it over to Mr. Beaty in March 1992.

Messrs. McGraw and Brown resisted the Roane County suit and, in March or April 1992, convinced the general sessions court to dismiss Mr. Beaty's suit for improper venue. For some reason not apparent in the record, the general sessions court overlooked ordering that the rig be returned as contemplated by Tenn. Code Ann. § 29-30-208 (1980). Messrs. McGraw and Brown perfected a de novo appeal to the Circuit Court for Roane County because the Roane County General Sessions Court had declined to order Mr. Beaty to return the rig when it dismissed his case.

On April 2, 1992, Mr. Beaty filed suit in the Fentress County General Sessions Court seeking possession of the rig and damages. His application of the writ of possession recited that Mr. Beaty already had possession of the rig but that he was "in need of an order conferring the right to possession." The Fentress County General Sessions Court issued a writ of possession on April 3, 1992. After the entry of an order in Mr. Beaty's favor on June 2, 1992, Messrs. McGraw and Brown perfected a de novo appeal to the Circuit Court for Fentress County.

Thus, by April 1992, the parties were pursuing similar issues in both the Circuit Court for Roane County and the Circuit Court for Fentress County. In the Roane County proceeding, Messrs. McGraw and Brown again moved to dismiss Mr. Beaty's suit for improper venue. On October 5, 1992, the Circuit Court for Roane County dismissed Mr. Beaty's suit but, to Messrs. McGraw's and Brown's consternation, made no ruling on which party was entitled to possession of the drilling rig and declined to consider their claim for exemplary damages because they were pursuing a claim for exemplary damages in the Fentress County proceeding. On February 24, 1993, the Circuit Court for Fentress County entered a final order finding that Mr. Beaty was entitled to possession of the drilling rig but that Messrs. McGraw and Brown could obtain possession of the rig by paying Mr. Beaty $25,000 within thirty days. The court did not award Messrs. McGraw and Brown exemplary damages.

Messrs. McGraw and Brown appealed both circuit court judgments. The Roane County case was the first to reach the Court of Appeals. A panel of Western Section judges, sitting in Knoxville, held that Messrs. McGraw and Brown were entitled to damages for Mr. Beaty's wrongful taking of the drilling rig and remanded the case with directions to assess these damages once the circuit court determined that it had subject matter jurisdiction to decide the claim.[1] *See Beaty v. McGraw*, No. 03A01-9211-CV-00417, 1993 WL 119799

---

[1]Mr. Beaty had contended that a private act gave the Roane County General Sessions Court
(continued...)

-3-

(Tenn. Ct. App. Apr. 16, 1993) (No Tenn. R. App. P. 11 application filed). In the second decision, a panel of Middle Section judges affirmed the Circuit Court for Fentress County's judgment awarding Mr. Beaty $25,000 plus prejudgment interest but also found that Mr. Beaty had wrongfully detained the drilling rig. Accordingly, the court remanded the case to the circuit court for the consideration of damages. *See Beaty v. McGraw*, No 01A01-9312-CV-00544, 1994 WL 440897 (Tenn. Ct. App. Aug. 17, 1994) (No Tenn. R. App. P. 11 application filed).

At this point, both the Roane County and the Fentress County actions had been remanded to their respective trial courts with instructions to determine the damages due to Messrs. McGraw and Brown for Mr. Beaty's wrongful detention of the drilling rig. In the Roane County proceeding, the circuit court was to assess the damages from March 13, 1992 through April 3, 1992 – the time that Mr. Beaty held the rig under the aegis of the writ of possession issued by the Roane County General Sessions Court. In the Fentress County proceeding, the circuit court was to assess the damages from April 3, 1992 through mid-August, 1994 – the time that Mr. Beaty held the rig under the writ of possession issued by the Fentress County General Sessions Court.[2]

On October 28, 1994, the Circuit Court for Roane County entered an order finding that it had subject matter jurisdiction and awarding Messrs. McGraw and Brown $1,885 in damages for the wrongful detention of the drilling rig from March 13 to April 3, 1992. The circuit court based its award on the fair monthly rental value of the drilling rig.[3]

During the hearing before the Circuit Court for Fentress County, Messrs. McGraw and Brown asserted that the court should calculate their damages using the same calculation that had been used in the Roane County proceedings. The circuit court chose instead to base its damage calculation on the actual income Messrs. McGraw and Brown earned from the drilling rig in 1991.[4] After determining that Mr. Beaty had wrongfully detained the drilling

---

[1](...continued)
concurrent jurisdiction with the Circuit Court for Roane County on matters of replevin. Therefore, he had argued that Messrs. McGraw and Brown's appeal from the Roane County General Sessions Court should have been to the Court of Appeals rather than to the circuit court.

[2]After this court's decision in the second appeal, Mr. Beaty returned the drilling rig to Messrs. McGraw and Brown.

[3]The circuit court found that the rig's fair monthly rental value was $5,000. After deducting $2,500 representing the monthly expenses for operating the rig, the court prorated the $2,500 net income based on the three weeks that Mr. Beaty had the rig in his possession.

[4]The circuit court determined that Messrs. McGraw and Brown earned $10,500 from the rig
(continued...)

-4-

rig under the writ of possession issued by the Fentress County General Sessions Court for twenty-nine months, the circuit court awarded Messrs. McGraw and Brown $26,021 in damages plus $8,000 in attorney's fees under Tenn. Code Ann. § 29-30-110. Both Mr. Beaty and Messrs. McGraw and Brown have appealed from the Circuit Court for Fentress County's April 25, 1996 order. Thus, we consider this dispute for the third time.

## II.
### THE COLLATERAL ESTOPPEL ISSUE

We turn first to the collateral estoppel issue. Messrs. McGraw and Brown assert that Mr. Beaty is collaterally estopped to advance any measure of damages for his wrongful detention of the drilling rig other than the fair rental value of the rig during the time it was detained because that was the measure of damages adopted by the Circuit Court for Roane County. Mr. Beaty responds that Messrs. McGraw and Brown are impermissibly seeking to use the doctrine of collateral estoppel offensively. Both sides are mistaken.

### A.

Collateral estoppel is an issue preclusion doctrine devised by the courts. *See Dickerson v. Godfrey*, 825 S.W.2d 692, 694 (Tenn. 1992); *Goeke v. Woods*, 777 S.W.2d 347, 349 (Tenn. 1989); *Morris v. Esmark Apparel, Inc.*, 832 S.W.2d 563, 565 (Tenn. Ct. App. 1991). Like other preclusion doctrines, its purposes are to conserve judicial resources, to relieve litigants from the cost and vexation of multiple lawsuits, and to encourage reliance on judicial decisions by preventing inconsistent decisions. *See Allen v. McCurry*, 449 U.S. 90, 94, 101 S. Ct. 411, 414-15 (1980); *Disimone v. Browner*, 121 F.3d 1262, 1267 (9th Cir. 1997).

Judge Friendly succinctly explained issue preclusion when he observed over thirty years ago that "[w]here the litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964). Thus, as our courts have construed the collateral estoppel doctrine, it bars the same parties or their privies from relitigating in a second suit issues that were actually raised and determined in an earlier suit. *See Massengill v. Scott*, 738 S.W.2d 629, 631 (Tenn. 1987); *Collins v. Greene County Bank*, 916 S.W.2d 941, 945 (Tenn. Ct. App. 1995). Stated another way, when an issue has been actually and

---

[4](...continued)
in 1991.

necessarily determined in a former action between the parties, that determination is conclusive against them in subsequent litigation. *See King v. Brooks*, 562 S.W.2d 422, 424 (Tenn. 1978); *Allied Sound, Inc. v. Neely*, 909 S.W.2d 815, 820 (Tenn. Ct. App. 1995).

The party seeking to rely on the doctrine of collateral estoppel has the burden of proof. *See Dickerson v. Godfrey*, 825 S.W.2d at 695. To invoke the doctrine successfully, the party must demonstrate:

1.  that the issue sought to be precluded is identical to the issue decided in the earlier suit;[5]

2.  that the issue sought to be precluded was actually litigated and decided on its merits in the earlier suit;[6]

3.  that the judgment in the earlier suit has become final;[7]

4.  that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier suit;[8] and

5.  that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier suit to litigate the issue now sought to be precluded.[9]

At common law, the collateral estoppel doctrine required mutuality of the parties and could only be used defensively. Thus, a defendant traditionally employed the doctrine to prevent a plaintiff from relitigating a claim that the plaintiff has previously litigated against the defendant and lost. The United States Supreme Court expanded the application of the collateral estoppel doctrine in federal courts when it discarded the common-law mutuality of parties requirement. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326-333, 99 S. Ct. 646, 649-653 (1979).

The federal courts and many state courts now permit the offensive use of the collateral estoppel doctrine in two ways. First, the doctrine can be used when a plaintiff seeks to

---

[5] *See Tennessee Farmers Mut. Ins. Co. v. Moore*, 958 S.W.2d 759, 767 (Tenn. Ct. App. 1997); *Scales v. Scales*, 564 S.W.2d 667, 670 (Tenn. Ct. App. 1977).

[6] *See Dickerson v. Godfrey*, 825 S.W.2d at 694-95; *A.L. Kornman Co. v. Metropolitan Gov't*, 216 Tenn. 205, 213, 391 S.W.2d 633, 637 (1965).

[7] *See Frank Rudy Heirs Assocs. v. Sholodge, Inc.*, 967 S.W.2d 810, 813 (Tenn. Ct. App. 1997); *Morris v. Esmark Apparel, Inc.*, 832 S.W.2d at 565.

[8] *See Blue Diamond Coal Co. v. Holland-America Ins. Co.*, 671 S.W.2d 829, 832 (Tenn. 1984); *Shelley v. Gipson*, 218 Tenn. 1, 13, 400 S.W.2d 709, 714 (1966).

[9] *See Jenne v. Snyder-Falkinham*, 967 S.W.2d 327, 330 (Tenn. Ct. App. 1997); *Morris v. Esmark Apparel, Inc.*, 832 S.W.2d at 566; Restatement (Second) of Judgments § 29 (1982).

foreclose a defendant from relitigating an issue that the defendant had previously litigated unsuccessfully in another action against the same plaintiff. This form of collateral estoppel is commonly referred to as "mutual offensive collateral estoppel" because the parties in the two proceedings are the same. Second, the doctrine can be used when a plaintiff seeks to foreclose a defendant from relitigating an issue that the defendant had previously litigated unsuccessfully in another action against a different party. This form of collateral estoppel is commonly known as "nonmutual offensive collateral estoppel." *See United States v. Mendoza*, 464 U.S. 154, 159 n.4, 104 S. Ct. 568, 571 n.4 (1984); *Parkland Hosiery Co. v. Shore*, 439 U.S. at 326 n.4, 99 S. Ct. at 649 n.4; *Chicago Truck Drivers, Helpers and Warehouse Union (Indep.) Pension Fund v. Century Motor Freight, Inc.*, 125 F.3d 526, 530 n.3 (7th Cir. 1997).

Only a small number of states presently continue to adhere to the mutuality of parties requirement. *See* 1B James W. Moore & Jo D. Lucas, *Moore's Federal Practice* ¶ 0.441 [3.-2] (1995). Tennessee is one of these states. Our courts have repeatedly declined to approve the use of nonmutual offensive collateral estoppel. *See Gann v. International Harvester Co.*, 712 S.W.2d 100, 101 (Tenn. 1986); *Algood v. Nashville Mach. Co.*, 648 S.W.2d 260, 261 (Tenn. Ct. App. 1983); *see also Leathers v. U.S.A. Trucking, Inc.*, No. 02A01-9109-CV-00198, 1992 WL 37146, at *1 (Tenn. Ct. App. Mar. 2, 1992) (No Tenn. R. App. P. 11 application filed); *Beaman Bottling Co. v. Bennett*, No. 03A01-9103-CV-00091, 1991 WL 218228, at *2 (Tenn. Ct. App. Oct. 29, 1991) (No Tenn. R. App. P. 11 application filed); *Carroll v. Times Printing Co.*, No. 596, 1987 WL 10332, at *3 (Tenn. Ct. App. May 5, 1987) (No Tenn R. App. P. 11 application filed).

We can, however, find no decision in which an appellate court of this state has addressed the propriety of mutual offensive collateral estoppel – that is, permitting the plaintiff to foreclose a defendant from relitigating an issue that the defendant had previously litigated unsuccessfully in another action against the same plaintiff.[10] On the face of it, permitting the use of mutual offensive collateral estoppel seems to provide all the benefits of the issue preclusion doctrine without any of the perceived undesirable consequences of nonmutual offensive collateral estoppel. Recognizing the doctrine will not increase the total amount of litigation, and it will not necessarily be unfair to the defendant. *See Leathers v. U.S.A. Trucking, Inc.*, 1992 WL 37146, at *2 (discussing the undesirable consequences of nonmutual offensive collateral estoppel).

---

[10]This court may have applied mutual offensive collateral estoppel in a case involving the construction of a will where the parties in the two proceedings were in privity with each other. *See Aclin v. Speight*, 611 S.W.2d 54, 55 (Tenn. Ct. App. 1980).

Accordingly, we find that trial courts may permit the use of mutual offensive collateral estoppel in proper circumstances. This decision is discretionary with the trial court. *See Parklane Hosiery Co. v. Shore*, 439 U.S. at 331, 99 S. Ct. at 651-52; *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 391 (5th Cir. 1998). Mutual offensive collateral estoppel should be permitted only when the alignment of the parties and the legal and factual issues warrant it. *See Nations v. Sun Oil Co.*, 705 F.2d 742, 744-45 (5th Cir. 1983). The trial court's discretion has its limits, and the trial court must take special care to ensure that the offensive application of the doctrine does not work a hardship on the party against whom the estoppel is asserted. *See Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1486 (2d Cir. 1995); *Raytech Corp. v. White*, 54 F.3d 187, 190 (3d Cir. 1995). In exercising its discretion, the trial court may consider (1) whether the plaintiff could have joined the former suit but decided instead to adopt a "wait and see" attitude, (2) whether the defendant had an incentive to defend the former suit vigorously, and (3) whether the judgment on which the plaintiff seeks to rely is itself inconsistent with previous judgments against the defendant. *See Parklane Hosiery Co. v. Shore*, 439 U.S. at 330-31, 99 S. Ct. at 651-52; *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d at 391.

## B.

Messrs. McGraw and Brown assert that Mr. Beaty should be collaterally estopped from relitigating the issue of the applicable measure of damages for his wrongful detention of the drilling rig because the Circuit Court for Roane County already a particular measure of damages in the earlier Roane County proceeding. Mr. Beaty responds that Messrs. McGraw and Brown should not be permitted to use the collateral estoppel doctrine offensively. In light of our conclusion that the collateral estoppel doctrine can be used offensively when the parties in both suits are the same, we find that Messrs. McGraw and Brown may invoke the collateral estoppel doctrine if they can demonstrate that all the necessary ingredients are present. Accordingly, we must examine the requirements of the collateral estoppel doctrine in light of the facts of this case.

This appeal implicates the first two requirements for the collateral estoppel doctrine – that the issue sought to be precluded must be identical to the issue actually litigated and decided on the merits in the earlier suit. We must decide whether the choice of the measure of damages for Mr. Beaty's wrongful detention of the drilling rig under the writ of possession issued by the Roane County General Sessions Court is the same issue as the choice of the measure of damages for Mr. Beaty's wrongful detention of the drilling rig under the later writ

of possession issued by the Fentress County General Sessions Court. The very formulation of the issue foretells the answer.

When a party invokes the collateral estoppel doctrine, the court must first ascertain what issue or issues were actually decided in the first proceeding. *See Anvan Realty & Management Co. v. Marks*, 680 F. Supp. 1247, 1249 (N.D. Ill. 1988). For the purpose of this analysis, an "issue" is any disputed point or question raised by the parties' pleadings concerning which the parties desire a decision. *See Paine & Williams Co. v. Baldwin Rubber Co.*, 113 F.2d 840, 843 (6th Cir. 1940); *Muller v. Muller*, 45 Cal. Rptr. 182, 184 (Ct. App. 1965); *In re Powers*, 493 N.W.2d 166, 169 (Neb. 1992); *Commonwealth v. Willow Grove Veterans Home Ass'n, Inc.*, 509 A.2d 958, 961 (Pa. Commw. Ct. 1986); 1B James W. Moore & Jo D. Lucas, *Moore's Federal Practice* ¶ 0.443[2] (1995). The court must then determine what issue or issues are involved in the second proceeding and must compare the issues in the two proceedings to determine whether they are identical. For the collateral estoppel doctrine to apply, the issue sought to be precluded in the second proceeding must be identical, not merely similar, to the issue decided in the first proceeding. *See Farha v. FDIC*, 963 F.2d 283, 286 (10th Cir. 1992); *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1399 (9th Cir. 1992).

The process for analyzing the identity of an issue will vary depending on whether the issue is a factual or legal one. Judge Feikens has explained that

> [The issue] may concern only the existence or non-existence of certain facts, or it may concern the legal significance of those facts. . . . If the issues are "merely evidentiary", they need only deal with the same past events to be considered identical. However, if they concern the legal significance of those facts, the legal standards to be applied must also be identical; different legal standards as applied to the same set of facts create different issues.

*Overseas Motors, Inc. v. Import Motors Ltd.*, 375 F. Supp. 499, 518 n.66a (E.D. Mich. 1974). Courts now rely on the following four inquiries taken from the Restatement (Second) of Judgments to guide their analysis of the identity of issues:

    (1)    Is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first?

    (2)    Does the new evidence or argument involve the application of the same rule of law as that involved in the prior proceeding?

    (3)    Could pretrial preparation or discovery related to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second?

(4) How closely related are the claims involved in the two proceedings?

Restatement (Second) of Judgments § 27 cmt. c (1982); *see also Disimone v. Browner*, 121 F.3d at 1267; *Greene v. United States*, 79 F.3d 1348, 1353 (2d Cir. 1996); *McLaughlin v. Bradlee*, 803 F.2d 1197, 1203 (D.C. Cir. 1986).

## C.

Determinations concerning the amount of damages are factually driven. *See Loftis v. Finch*, 491 S.W.2d 370, 377 (Tenn. Ct. App. 1972). Thus, the amount of damages to be awarded in a particular case is essentially a fact question. *See Sholodge Franchise Sys., Inc. v. McKibbon Bros., Inc.*, 919 S.W.2d 36, 42 (Tenn. Ct. App. 1995); *Buice v. Scruggs Equip. Co.*, 37 Tenn. App. 556, 571, 267 S.W.2d 119, 125 (1953). However, the choice of the proper measure of damages is a question of law to be decided by the court. *See American Trust Inv. Co. v. Nashville Abstract Co.*, 39 S.W. 877, 881 (Tenn. Chan. App. 1896); *see also Business Mens' Assurance Co. v. Graham*, 891 S.W.2d 438, 449 (Mo. Ct. App. 1994); *Town of Fifield v. State Farm Mut. Auto. Ins. Co.*, 349 N.W.2d 684, 686 (Wis. 1984).

Damages for the wrongful detention of property may be measured either by the fair market rental value of the property for the period of detention, *see Stanley v. Donoho*, 84 Tenn. 492, 494 (1886), or by the net profit lost during the detention period. *See American Bldgs. Co. v. DBH Attachments, Inc.*, 676 S.W.2d 558, 562-63 (Tenn. Ct. App. 1984); *Summers & Lewis v. Sanderson*, 7 Tenn. App. 624, 627-28 (1928). In the Roane County proceeding, the trial court used the fair market rental value of the property to calculate the damages for the three-week detention of the property. In the Fentress County proceeding, the trial court chose the net profit measure of damages. Messrs. McGraw and Brown insist that the doctrine of collateral estoppel required the trial court in Fentress County to use the same measure of damages that the Roane County trial court used. We disagree because all the elements necessary for the invocation of collateral estoppel do not exist with regard to this issue.

Matters adjudged as to one period of time are not necessarily an estoppel as to other time periods. *See International Shoe Machine Corp. v. United Shoe Machinery Corp.*, 315 F.2d 449, 455 (1st Cir. 1963). The value of the property's use may have been less if used over one period of time as opposed to another. *See Stanley v. Donoho*, 84 Tenn. at 494. The measure of damages for a long-term deprivation of personal property cannot necessarily be reliably calculated by extrapolating the damages for a short-term deprivation over a longer term. *See Perkins v. Brown*, 132 Tenn. 294, 299, 177 S.W. 1158, 1160 (1915) (rejecting the

calculation of damages for the loss of use of an automobile for twelve weeks based on the rental charge for the automobile for one week).

The doctrine of collateral estoppel does not apply in this case because of the significant factual differences between the three-week detention of the drilling rig under the Roane County writ of attachment and the 29-month detention under the Fentress County writ of attachment. While the nature of the claims in the two proceedings are similar, there is no overlap between the facts adduced in the Roane County proceeding and those adduced in the Fentress County proceeding. In addition, the Fentress County proceeding called for an application of different legal principles because the ability of Messrs. McGraw and Brown to mitigate their damages would have been greater during the long term, as opposed to the short term. The circumstances surrounding the use of a piece of heavy equipment like a drilling rig that may very well be fixed over a short period of a few weeks can easily change over a period of years. Profit opportunities come and go; planned and unplanned maintenance varies; deployment of the machinery can change; the competitive environment surrounding the use of the equipment can change; and even the tax consequences surrounding the use and depreciation of the equipment can change. Therefore, the factual differences between the period of detention under the Roane County writ of possession and the period of detention under the Fentress County writ of detention justified the Fentress County trial court's choice of a measure of damages different from the one employed by the trial court in Roane County.

### III.

#### THE CALCULATION OF DAMAGES FOR WRONGFUL DETENTION

Messrs. McGraw and Brown also contend that the trial court miscalculated their damages and erred by not awarding them exemplary damages. For his part, Mr. Beaty asserts that the evidence that Messrs. McGraw and Brown presented with regard to their damages did not support the amount of damages the trial court awarded. We have determined that the trial court's damage calculation is supported by the facts and that the trial court properly declined to award exemplary damages.

#### A.

#### COMPENSATORY DAMAGES

Both parties assert that the trial court did not give appropriate weight to Mr. Brown's testimony about the damages from the wrongful detention of the drilling rig. Messrs.

McGraw and Brown assert that the trial court did not give enough weight to Mr. Brown's testimony concerning their loss of a potential contract with the federal government; while Mr. Beaty asserts that the trial court did not give sufficient weight to Mr. Brown's concession that his income actually increased after Mr. Beaty repossessed the drilling rig.

Compensatory damages are intended to compensate the wronged party for the loss or injury sustained by the wrongdoer's conduct. *See Inland Container Corp. v. March*, 529 S.W.2d 43, 44 (Tenn. 1975). The goal is to restore the wronged party, as nearly as possible, to the position the party would have been in had the wrongful conduct not occurred. Damages need not be calculated with mathematical precision, *see Provident Life & Accident Indem. Co. v. Globe Ins. Co.*, 156 Tenn. 571, 576, 3 S.W.2d 1057, 1058 (1928); *Buice v. Scruggs Equip. Co.*, 37 Tenn. App. at 571, 267 S.W.2d at 125; they need only be proved with reasonable certainty. *See Act-O-Lane Gas Serv. Co. v. Clinton*, 35 Tenn. App. 442, 456, 245 S.W.2d 795, 802 (1951).

Whether the trial court has utilized the proper measure of damages is a question of law that we review do novo. *See generally Sexton v. Sevier County*, 948 S.W.2d 747, 749 (Tenn. Ct. App. 1997). On the other hand, the amount of damages actually awarded, where the amount is within the limits set by law, is a question of fact. *See Spence v. Allstate Ins. Co.*, 883 S.W.2d 586, 594 (Tenn. 1994); *Reagan v. Wolsieffer*, 34 Tenn. App. 537, 542, 240 S.W.2d 273, 275 (1951). In cases where the trial court is hearing the case without a jury, we review the amount of damages awarded by the trial court with the presumption that it is correct, and we will alter the amount of damages only when the trial court has adopted the wrong measure of damages or when the evidence preponderates against the amount of damages awarded. *See* Tenn. R. App. P. 13(d); *Armstrong v. Hickman County Highway Dep't*, 743 S.W.2d 189, 195 (Tenn. Ct. App. 1987).

We have already concluded that the trial court was free to select the measure of damages most appropriate to the facts of this case and that the trial court did not err by choosing to calculate Messrs. McGraw's and Brown's damages based on their net lost profits during the twenty-nine months that Mr. Beaty had the drilling rig. Thus the only remaining area of inquiry concerns the factual support for the trial court's damage award.

The trial court appears to have given relatively little weight to Mr. Brown's testimony concerning the anticipated contract with the federal government. Instead, the trial court's memorandum opinion shows that it placed greater weight on Mr. Brown's 1991 federal income tax return. Trial courts are not bound to accept any particular witness's testimony

concerning damages. *See Cole v. Clifton*, 833 S.W.2d 75, 77 (Tenn. Ct. App. 1992); *Tennessee Farmers Mut. Ins. Co. v. Hinson*, 651 S.W.2d 235, 238 (Tenn. Ct. App. 1983). While the record may very well support a different damage award, we cannot say that the trial court erred by discounting Mr. Brown's testimony about his anticipated profits and by basing its damage award on the amount of income that Mr. Brown was actually earning with the drilling rig before Mr. Beaty repossessed it.

Mr. Brown also testified that he and Mr. McGraw spent "probably five thousand dollars" to return the drilling rig to the condition it had been in before Mr. Beaty repossessed it and that it would take an additional "five to ten thousand" dollars to complete the repairs. However, he could produce repair bills for only $759.02. The trial court awarded Messrs. McGraw and Brown $646.21 after deducting what appear to be itemized fuel expenses from the repair bills that Mr. Brown produced. In light of Mr. Brown's inability to substantiate the other repair costs, we cannot say that the trial court erred by failing to award Messrs. McGraw and Brown more damages for repairs to the drilling rig.

## B.
### EXEMPLARY DAMAGES

Messrs. McGraw and Brown also contend that the trial court should have awarded them exemplary damages in light of the manner in which Mr. Beaty obtained the writ of possession from the Fentress County General Sessions Court. Tenn. Code Ann. § 29-30-210(a) permits awarding exemplary damages for wrongfully obtaining a writ of possession if the wrongdoer's actions have departed from the type of conduct that society has the right to expect. *See Huckeby v. Spangler*, 563 S.W.2d 555, 558-59 (Tenn. 1978). An exemplary damage award must be preceded by an award for actual damages. *See Whittington v. Grand Valley Lakes, Inc.*, 547 S.W.2d 241, 243 (Tenn. 1977). The decision to award exemplary damages rests with the trial court's discretion. *See Foster v. Jeffers*, 813 S.W.2d 449, 454 (Tenn. Ct. App. 1991).

When Mr. Beaty sought a writ of possession from the Fentress County General Sessions Court, he alleged that Messrs. McGraw and Brown had reneged on their promise to sign a written contract for the purchase of the drilling rig and had failed to pay the balance due on the drilling rig. He also alleged that "the drilling rig was obtained by misrepresentation insofar as the defendant Bobby McGraw represented that he and [Mr.

-13-

Brown] would complete the transaction."[11] Even though neither the order granting the possessory writ nor the writ itself is in the record, we assume that the general sessions court issued the writ on the ground that Messrs. McGraw and Brown obtained the writ through misrepresentations.

After the case was remanded to the trial court for the assessment of damages, Mr. Beaty was asked "Now, with respect to Mr. Brown and Mr. McGraw, have either of them misrepresented anything to you in their conduct towards you?" Mr. Beaty responded, "No, they've not in any way. I mean, just that they wasn't paying." Messrs. McGraw and Brown have seized on this answer as a basis for insisting that they are entitled to collect exemplary damages because Mr. Beaty knowingly made untrue statements in his application for the writ of possession.

Looking at the trial record as a whole, we cannot say that this brief exchange between Mr. Beaty and counsel contradicts the statements in Mr. Beaty's sworn application for a writ of possession. During the same line of questioning, Mr. Beaty was also asked if he had "any reason to believe that an action for the recovery of this drilling rig was the proper action to take." He replied, "Well, we had a contract and [Mr. Brown] kept saying he would get it signed. I thought we had a legal right to pick [the rig] up anywhere it was." This response is completely consistent with the allegations in Mr. Beaty's application for a writ of possession.

The trial court had the discretion in the first instance to determine whether the facts of this case warranted awarding exemplary damages against Mr. Beaty. The trial court heard all the evidence and was not convinced that Mr. Beaty swore falsely in his application for the writ. While the cited passages from Mr. Beaty's testimony could be read more than one way, we will not, from this distance, place the trial court in error for its interpretation of Mr. Beaty's testimony. Having considered the arguments of Messrs. McGraw and Brown, we cannot say that the trial erred by determining that this was not a case for exemplary damages under Tenn. Code Ann. § 29-30-210(a).

## IV.
### THE AWARD OF ATTORNEY'S FEES

---

[11]One of the statutory grounds for obtaining a writ of possession is that the property was obtained by misrepresentation. *See* Tenn. Code Ann. § 29-30-106(1)(B)(I) (1980).

As a final matter, we turn to the propriety of the trial court's decision to award Messrs. McGraw and Brown $8,000 in attorney's fees. Mr. Beaty takes issue with this award because the proof concerning the reasonableness of these fees does not differentiate between the time spent unsuccessfully defending Mr. Beaty's breach of contract action and the time spent pursuing their own wrongful possession claim.

Tenn. Code Ann. § 29-30-110 permits a trial court to award a party reasonable attorney's fees as exemplary damages for the "wrongful suing out of [a] possessory action or in the event that the plaintiff fails to prosecute the action after it has been instituted." In the earlier appeals of this case, this court held that Mr. Beaty had failed to prosecute the Roane County action, *see Beaty v. McGraw*, 1993 WL 119799, at *4, and that Mr. Beaty lacked any basis for instituting the possessory action in Fentress County. *See Beaty v. McGraw*, 1994 WL 440897, at *2-3. These findings gave the trial court sufficient justification to award attorney's fees in its discretion. However, even though Messrs. McGraw and Brown might have been entitled to attorney's fees for their successful action for wrongful possession, they were not entitled to attorney's fees for unsuccessfully defending against Mr. Beaty's breach of contract claim. Mr. Beaty prevailed on that claim. *See Beaty v. McGraw*, 1994 WL 440897, at *3.

Messrs. McGraw and Brown had the burden of proving the amount of their legal fees for vindicating their rights to possession of the drilling rig. *See In re Estate of Perlberg*, 694 S.W.2d 304, 309 (Tenn. Ct. App. 1984) (holding that the burden of establishing a reasonable attorney's fee is on the party claiming it); *Cook & Nichols, Inc. v. Peat, Marwick, Mitchell & Co.*, 480 S.W.2d 542, 545 (Tenn. Ct. App. 1971). When a party substantiates a claim for attorney's fees, the trial court has a duty to award a reasonable fee. *See Taylor v. T & N Office Equip., Inc.*, No. 01A01-9609-CV-00411, 1997 WL 2724444, at *4 (Tenn. Ct. App. May 23, 1997) (No Tenn. R. App. P. 11 application filed).

We are significantly handicapped in considering the propriety of the attorney's fee award in this case because Messrs. McGraw and Brown failed to provide records making it possible to determine the amount of time their lawyers devoted to defending Mr. Beaty's breach of contract action and the amount of time their lawyers spent prosecuting their wrongful possession claim. The fee awarded by the trial court likewise cannot be traced back to the time the lawyers representing Messrs. McGraw and Brown devoted solely to their clients' wrongful possession claim.

-15-

With the record in its present state, we are unable either to determine that the trial court's decision to award Messrs. McGraw and Brown $8,000 for the legal expenses was reasonable or to make an award of reasonable attorney's fees ourselves. Therefore, we have no choice other than to vacate this portion of the judgment and remand the case for the reconsideration of the attorney's fee issue. The trial court should set a reasonable fee based on the time that the lawyers for Messrs. McGraw and Brown spent on their wrongful possession claim and should evaluate the requested fee in light of the factors found in Tenn. S. Ct. R. 8, DR 2-106(b). *See Taylor v. T & N Office Equip., Inc.*, 1997 WL 272444, at *5.

## V.

We affirm all portions of the judgment except for the $8,000 award of attorney's fees which we vacate and remand for further proceedings in accordance with this opinion. We tax the costs of this appeal in equal proportions to Guy Beaty and, jointly and severally, to Bobby McGraw and Steve Brown and their surety for which execution, if necessary may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:


_____
HENRY F. TODD,
PRESIDING JUDGE , M.S.


_____
SAMUEL L. LEWIS, JUDGE