# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### November 9, 2011 Session

## DOUGLAS COFER v. DONNIE HARRIS AND MARCIA HARRIS

### Appeal from the Chancery Court for Bradley County
#### No. CV09195      Jerri S. Bryant, Chancellor

---

### No. E2011-00242-COA-R3-CV-FILED-JANUARY 12, 2012

---

This case arises from a dispute over an alleged partnership.  Douglas Cofer ("Cofer") filed suit in the Chancery Court for Bradley County ("the Trial Court") against Donnie Harris and Marcia Harris ("the Harrises", collectively).  Cofer alleged that the Harrises were successors in a partnership established between Cofer and the Harrises' father, Homer Harris, regarding the development of a trailer park on Homer Harris's land.  After a trial, the Trial Court found that, rather than a partnership, a lease relationship existed between the parties.  The Trial Court awarded the Harrises damages for unpaid rent.  Cofer appeals, raising various issues. The Harrises raise one issue on appeal concerning the calculation of damages. We affirm the judgment of the Trial Court in all respects.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., and JOHN W. MCCLARTY, JJ., joined.

Randy Sellers, Cleveland, Tennessee, for the appellant, Douglas Cofer.

William J. Brown, Cleveland, Tennessee, for the appellees, Donnie Harris and Marcia Harris.

# OPINION

## Background

Cofer filed suit against the Harrises in the Trial Court in June 2009. In his complaint, Cofer alleged that he had a business relationship with Homer Harris, the father of and predecessor in title to the Harrises, whereby Cofer developed a trailer park on property owned by Homer Harris.[1] Cofer alleged that he paid thirty-five percent of the net profits of the venture to Homer Harris and also paid for various developments on the property over the years. Cofer sought, among other things, a declaratory judgment as to his rights to maintain the business venture, or, in the alternative, that the Trial Court declare that a partnership existed.

The Harrises filed an answer and counterclaim in September 2009. The Harrises requested, among others things, that the Trial Court declare that Cofer had no interest in the real property at issue. The Harrises asserted that no partnership existed, but, that if one did, the Harrises wished to end the partnership. The Harrises demanded an accounting from Cofer as well as damages.

In November 2009, the Trial Court entered an agreed order requiring Cofer to answer interrogatories and produce documents subject to the availability of records and his memory. In February 2010, the Trial Court entered an order stating that Cofer had not complied fully with the previous order regarding documentation and interrogatories. In May 2010, the Harrises filed a motion for attorney's fees and expenses because of Cofer's failure to comply with the Trial Court's discovery order.

This case was tried in August 2010. Numerous witnesses testified. As relevant to the issues before us, we will focus on the testimony of Cofer and the accountant who prepared the parties' tax filings.

Cofer testified. Cofer was a retiree who had worked for DuPont for thirty years. Cofer stated that, in 1995, he proposed to Homer Harris, his brother-in-law, that the two begin a business venture whereby Cofer would develop a trailer park on land owned by Homer Harris. Cofer was to receive sixty-five percent of the income while Homer Harris would receive thirty-five percent of the money earned. Cofer did develop a trailer park on Homer Harris's land. Homer Harris later conveyed his interest in the real property to his

---

[1]Apparently, the real property was owned at that time by Homer Harris and his wife, Geraldine Harris. Homer Harris later transferred his interest in this property to Geraldine Harris.

wife, Geraldine Harris. Upon Geraldine Harris's death, the property passed to the Harrises.

Cofer carried on the arrangement with the Harrises for a period of time after Geraldine Harris's death. In May 2009, Marcia Harris sent Cofer a letter stating that Cofer's services were no longer required due to his alleged failure to keep proper accounting and tardiness in making payments to the Harrises.

Gerald Fritz Harris ("Fritz Harris"), an accountant, testified. Fritz Harris is a brother of the Harrises and Cofer's nephew. Fritz Harris performed tax work for both parties in this case. Tax returns for the parties, entered into the record, contain no partnership filings and no indication any partnership existed. Additionally, Cofer depreciated the improvements of the trailer park on his own individual returns.

Following trial, the Trial Court entered an order in favor of the Harrises. In its detailed findings of fact and conclusions of law incorporated into its order, the Trial Court stated, in part:

> The Court finds that the defendants were both . . . very polite, reasonable, and credible during their testimony. The Court finds that the [Harrises] have proven that this was a lease, not a partnership.
>
> * * *
>
> They are requesting in this case possession of the real estate, unpaid rent, damages for any cleanup on the property, and a restraining order for Mr. Cofer to stay away from them.
>
> There was no contract between the parties, no written agreement about time, length, or duration of the agreement between the parties, or the lease. So the most I think the Court could find would been a lease for one year or a month-to-month lease.
>
> There was no sharing of profits other than the lease payments of 35 percent of the rents. The parties didn't discuss it much more than that. There certainly was no proof of any co-ownership. The parties on their tax returns did not show this as a partnership; and they used, and I think that was another significant factor, they used the same CPA, albeit a relative, to do the tax work of the parties.
>
> The CPA testified, as did Mr. Cofer, gross and net were basically the

-3-

same number. It then became who was going to take the deductions of the expenses. The plaintiff took depreciation of the improvements and expenses; the defendant did not. The parties did not hold themselves out as a partnership and so there is no dissolution for the Court to order.

The parties might have gone on in this relationship, even through the change of ownership from Mr. Harris to his wife Mrs. Harris and then as the property was passed down to the two defendants in this case, but the rents became untimely. And the Court finds that the plaintiff breached the lease agreement by failing to timely pay rents and did become behind, at least at one point, as much as five months. At that point the defendants were entitled to evict him, and they did send him a letter to do so in May of 2009.

[Cofer] has come into this court with unclean hands. He doesn't have documentation and has been obstreperous in producing documentation throughout the court process. The agreement was breached and they are entitled to evict him.

In its order, the Trial Court stated, regarding damages, in part:

The Harris[es] are granted judgment in the amount of $74,950.00 against Mr. Cofer for their damages associated with Mr. Cofer's improper holding over possession of the property after August 1, 2009. This amount is calculated by multiplying 44 rental units times $175 per month for the period between August 1, 2009 through July 29, 2010 (13 months). This would total $100,100. Mr. Cofer is given credit for $25,150.00 that was paid to the Harris[es] during that period. The credit is subtracted from the gross rentals for that period resulting in amount of $74,950.00.

In addition, the Harris' are granted judgment in the amount of $6,344.75 for the period from January 1, 2009 through July 31, 2009. This period represents the period that Mr. Cofer was in arrears in lot rentals and the sixty days found by the court to be a reasonable period for the removal of the trailers after the notice was presented to him by Marcia Harris on May 27, 2009. This figure is calculated by multiplying the seven months at $175 a month times 44 rental units. This would total $53,900. The Harris' share of that would be $18,865. Mr. Cofer is given credit for the $12,520.25 he paid for the period which results in a judgment for this period in the amount of $6,344.75.

Subsequently, the Trial Court entered additional orders. The Trial Court awarded the Harrises $5,000.00 in attorney's fees. The Trial Court further awarded the Harrises $2,690.75 in discretionary costs. Finally, the Trial Court granted the Harrises $7,494.96 in additional damages. Cofer appeals.

**Discussion**

Thought not stated exactly as such, Cofer raises three issues on appeal: 1) whether the Trial Court erred in failing to find that a partnership existed between the parties; 2) whether the Trial Court erred in awarding attorney's fees for Cofer's failure to produce documents as ordered; and, 3) whether the Trial Court erred in awarding discretionary costs. Though not stated exactly as such, the Harrises raise one issue on appeal: whether the Trial Court erred in failing to award damages for unpaid rent from January 1, 2002 through December 31, 2008.

In a non-jury case such as this one, we review the record *de novo* with a presumption of correctness as to the trial court's determination of facts, and we must honor those findings unless the evidence preponderates to the contrary. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to the trial court's factual findings. *Seals v. England/Corsair Upholstery Mfg. Co., Inc.*, 984 S.W.2d 912, 915 (Tenn. 1999). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first address whether the Trial Court erred in failing to find that a partnership existed between the parties. The Revised Uniform Partnership Act defines a "partnership" generally as "an association of two (2) or more persons to carry on as co-owners of a business or other undertaking for profit . . . ." Tenn. Code Ann. § 61-1-101 (7) (Supp. 2011). We have held that determining what constitutes a partnership is generally a matter of law, but whether a partnership exists under conflicting evidence is a question of fact. *Wyatt v. Brown*, 281 S.W.2d 64, 68 (Tenn. Ct. App. 1955). As there is no written partnership agreement in this case, Cofer bears the burden of proving the existence of a partnership by clear and convincing evidence. *See Tidwell v. Walden,* 330 S.W.2d 317, 319 (Tenn. 1959); *Kuderewski v. Estate of Hobbs*, No. E2000-02515-COA-R3-CV, 2001 WL 862618, at *3 (Tenn. Ct. App. July 30, 2001), *no appl. perm. appeal filed*.

Our Supreme Court considered the issue of an implied partnership in *Bass v. Bass*, 814 S.W.2d 38 (Tenn. 1991). In that case, the Court held that "the existence of a

-5-

partnership may be implied from the circumstances where it appears that the individuals involved have entered into a business relationship for profit, combining their property, labor, skill, experience, or money." *Bass*, 814 S.W.2d at 41 (internal footnote omitted).

In *Bass*, Linda Bass and William Bass dated for some time and then moved in together in 1975. *Id*. at 39-40. In 1976, Mr. Bass acquired a restaurant in a nearby town, and the couple moved there to operate the restaurant. *Id*. at 40. The Supreme Court summarized the couple's business activities in subsequent years as follows:

> The Plaintiff initially operated the restaurant by herself, working 17 hour days taking orders, cooking meals, cleaning, and running the cash register. . . . When William Bass began working at the restaurant, he and the Plaintiff each worked 12 hour shifts in order to keep the restaurant open 24 hours a day. Linda Bass was not compensated for her efforts at the restaurant, although she worked there extensively from 1976 to 1981, when the restaurant burned. During the time that Linda Bass worked at the restaurant, William Bass started a video amusement game business . . . .
>
> ***
>
> The Plaintiff would assist William Bass in the daily servicing of the video machines, help decide where new machines should be located, and kept most of the records of the various businesses. Although she was not listed as a partner or co-owner of any of the businesses, she wrote and signed most of the checks for the operation of the businesses, worked on the machines, and collected money from them (sometimes more than once a day). She was not paid a salary or wages for her efforts.

*Id*. The trial court concluded that Linda Bass and William Bass had an implied partnership. This Court reversed, but the Supreme Court reinstated the trial court's original judgment, finding that Linda Bass was entitled to half of the partnership assets upon the death of William Bass. *Id*. at 44. In doing so, the Supreme Court stated, "It was through the joint efforts of William Bass and Linda Bass that the businesses prospered. That prosperity was due in equal part to the effort of Linda Bass." *Id*.

The evidence does not preponderate against any of the Trial Court's findings relevant to this first issue. The facts of the instant case do not support a finding, by clear and convincing evidence, that a partnership existed between the parties. Rather, the record reflects, as found by the Trial Court, that Homer Harris leased his property to Cofer. The parties used the same accountant, Fritz Harris. Notably, no partnership tax returns ever were

filed. Likewise, the Harrises never were furnished an IRS form K-1 relative to any such alleged partnership interest for use in their individual tax returns. Cofer claimed all the depreciation from the improvements on the property on his individual tax returns.

We do not find that Cofer's lot rental arrangement with Homer Harris, or his successors in interest, constitutes an implied partnership under Tennessee law. Cofer failed to prove that a partnership existed by clear and convincing evidence. We agree with the Trial Court's conclusion that no partnership existed between the parties in this case.

We next address whether the Trial Court erred in awarding attorney's fees for Cofer's failure to produce documents. We review discovery sanctions imposed by a trial court under Tenn. R. Civ. P. 37 for abuse of discretion. *Lyle v. Exxon Corp.*, 746 S.W.2d 694, 699 (Tenn. 1988). In *Lee Medical, Inc. v. Beecher,* 312 S.W.3d 515 (Tenn. 2010), the Supreme Court discussed the abuse of discretion standard at length, stating:

> The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009); *State ex rel. Jones v. Looper,* 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000). It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999). Thus, it does not permit reviewing courts to second-guess the court below, *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999), or to substitute their discretion for the lower court's, *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002).
>
> Discretionary decisions must take the applicable law and the relevant facts into account. *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. *State v. Lewis,* 235 S.W.3d 136, 141 (Tenn. 2007). A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *State*

*v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009); *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d at 358; *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d at 42.

> To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions. *Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008) (quoting *BIF, a Div. of Gen. Signal Controls, Inc. v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409, at *3 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed)). When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower court's legal determinations de novo without any presumption of correctness. *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004); *Boyd v. Comdata Network, Inc.,* 88 S.W.3d at 212.

*Beecher*, 312 S.W.3d at 524-25.

The record shows that Cofer failed to comply completely with the Trial Court's order on discovery. Cofer argues that his actions with respect to producing documents did not prejudice the parties or factor in the Trial Court's ultimate decision, and, at any rate, he substantially complied with the Trial Court's order. The fact remains, however, that Cofer did not comply *fully* with the Trial Court's order on discovery. In its findings of fact and conclusions of law, the Trial Court characterized Cofer as "obstreperous in producing documentation." Notwithstanding Cofer's other compliance, the decision of the Trial Court to sanction his noncompliance runs afoul of neither the law nor the evidence. The Trial Court neither applied an incorrect legal standard nor reached an illogical or unreasonable decision. As the evidence does not preponderate against the Trial Court's findings relative to this issue, the Trial Court did not base its decision on a clearly erroneous assessment of the evidence. The Trial Court did not abuse its discretion in awarding attorney's fees to the Harrises.

We next address whether the Trial Court erred in awarding discretionary costs. In pertinent part, Rule 54.04 of the Tennessee Rules of Civil Procedure provides:

**54.04.** Costs.-(1) Costs included in the bill of costs prepared by the clerk shall be allowed to the prevailing party unless the court otherwise directs, ...

(2) Costs not included in the bill of costs prepared by the clerk are allowable only in the court's discretion. Discretionary costs allowable are: reasonable and necessary court reporter expenses for depositions or trials, reasonable and necessary expert witness fees for depositions (or stipulated reports) and for trials, reasonable and necessary interpreter fees for depositions or trials, and guardian ad litem fees; travel expenses are not allowable discretionary costs ....

Tenn. R. Civ. P. 54.04. As would be expected, we review a Trial Court's decision to award discretionary costs for abuse of discretion. *E.g., Massachusetts Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 35 (Tenn. Ct. App. 2002).

Cofer argues that a lawsuit was inevitable, and, as both sides needed to support their side, neither side should bear the costs of both sides. While a novel argument, we do not comprehend how the alleged inevitability of a lawsuit results in an abuse of discretion by the Trial Court in awarding discretionary costs. The Trial Court did not abuse its discretion in awarding discretionary costs to the Harrises.

We next address the Harisses' issue of whether the Trial Court erred in failing to award damages for unpaid rent from January 1, 2002 through December 31, 2008. The Trial Court did award damages for unpaid rent for the period covering January 1, 2009 through July 2010. Regarding its computation of damages, the Trial Court explained, in part:

> The defendants accepted plaintiff's figures of gross revenue for years and at the time of the suit plaintiff was five months behind and that amount was owed - - it was and is still owed to the defendants.

> The Court will figure hold-over rent by taking - - I took the three previous years, 2007, 2008, 2009, and averaged the number of months that were actually rented. I didn't want to rely totally on the months available for rent that was produced in Exhibits 36, 37, and 38 as numbers from Volunteer Electric, so I will also take the rentals that were averaged over those three years and compare that with - - for the year of 2009 compare those gross receipts for those three years and give me the average number of rentals that were collected during that period of time.

> And then I want the attorneys also to look at in 2009 the figure of 44

-9-

rental units per month. That comports with to some extent the number on the Volunteer Electric rental numbers, the lot unit numbers based on the lots that were receiving or had power to them. But it also goes more in with the plaintiff's exhibit, I don't remember the exhibit numbers, but he gave two exhibits with specific lots and specific owners' names on them, and when I added those two different numbers up they were only within one or two trailers of being about the same number. So that's the number and the way I'm going to use to figure out the total rent due for 2009 and through today is 44 lots at one seventy-five.

\* \* \*

As to any back rents owed, there's no proof really of a proper amount paid from 2008 back, whether it was proper or improper. It's somewhat speculative to use only the Volunteer Electric meters that may have been running on trailers that may or may not have had rents collected. Both parties - - nobody ever challenged that until we got into court. Both parties signed tax returns saying that those amounts were true and correct. The totals that were reported appeared to have been fairly consistent over the years and so I'm not ordering any back rent for [2008] backwards.

Compensatory damages are intended "to restore the wronged party, as nearly as possible, to the position the party would have been in had the wrongful conduct not occurred." *Beaty v. McGraw*, 15 S.W.3d 819, 829 (Tenn. Ct. App. 1998). "Damages need not be calculated with mathematical precision, ... [and] they need only be proved with reasonable certainty." *Id*. The amount of damages awarded by the Trial Court is a question of fact, and as such, is subject to the standard of review set forth by Tenn. R. App. P. 13(d). *Id*.

The Harrises argue that the formula used by the Trial Court to award damages from 2009 on should just as well be applied to calculate damages from 2002 to 2008. We respectfully disagree. The Harrises would have the Volunteer Electric records establish a baseline for occupancy and thus damages. We, as did the Trial Court, find this problematic. The Trial Court relied on evidence apart from and in addition to Volunteer Electric records in making its calculation of damages from 2009 to 2010. For this reason and from the record before us, the precise formula used by the Trial Court to calculate damages from 2009 on could not be applied to the period before. The evidence does not preponderate against the Trial Court's award of damages because evidence was presented to the Trial Court relevant to the amount of damages from 2009 on that was not presented for the years 2002 through 2008. We affirm the judgment of the Trial Court on this issue, and in all respects.

-10-

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. Costs on appeal are taxed against the Appellant, Douglas Cofer, and his surety, if any.

_____
D. MICHAEL SWINEY, JUDGE