IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 5, 2005 Session

## J & M, INC., v. CLARENCE D. CUPPLES and CRETE CARRIER CORP.

**Direct Appeal from the Circuit Court for Scott County**
**No. 09285      Hon. Conrad Troutman, Circuit Judge**

**No. E2004-01328-COA-R3-CV  - FILED MAY 20, 2005**

Plaintiff sued for damages incurred to correct condition of roadway caused by defendants' motor vehicle which destroyed a section of guardrail. Defendants appeal from Judgment awarding damages to plaintiff on grounds damages were not proved. On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and SHARON G. LEE, J., joined.

Archie R. Carpenter, Knoxville, Tennessee, for appellants.

Andrew R. Tillman, and Thomas M. Gautreaux, Knoxville, Tennessee, for appellee.

**OPINION**

In this action for damages, the Trial Court awarded plaintiff $14,360.00. The defendants have appealed, insisting that the evidence preponderates against the decision of the Trial Court as to the amount of damages suffered by plaintiff.

The record establishes that defendant Cupples was an employee of Crete, acting in the course of his employment at the time of the accident, and his vehicle struck a guardrail, destroying a section which the parties stipulated to be 340 feet. Plaintiff was under contract with the State of Tennessee to replace the guard rails along that section of the interstate, and after the accident, the Department of Transportation directed plaintiff to "safen up" the area where the accident occurred. Plaintiff submitted a bill for the alleged damage to Crete, which detailed 329 feet

concrete barrier rail at $30.00 a foot in the amount of $9,870.00; 20 vertical panels with posts at $40.00 each, at $800.00; 340 foot guardrail salvage, $12.00 each at $4,080.00; 18 drums at $72.00 each, $1,296.00; traffic control supervisor - labor and equipment used, $1,600.00; overhead, expenses and fringes, 20% of the sub-total for a total amount of $21,175.20. The defendant refused to pay the billed amount and this action was filed.

As the issue before the Court was the amount of damages, the only person to testify was Dwayne Potter, who was the vice president of plaintiff J & M. He testified that his company was working on a two mile section of both the east and west bound sides of the interstate, and the accident occurred on the east bound side at the top of the Papermill ramp. Potter testified that he used portable concrete barrier rails, and was paid by the State for setting them up and moving them to different areas. He explained that the guardrail was removed in areas in which they were working and that portable concrete barrier rails were set up and then as they finished in one area and moved to the next, the process would be repeated so that the barrier rails were "cycled". He testified that he was instructed by the Department of Transportation to place concrete barrier rails in the place where the guardrail was torn out by defendants, "to safen it up". Potter testified the concrete barrier rail was unable to be "cycled" through the other part of the job site where they were currently working, and that those barrier rails would have been recycled through 2-1/2 times before they got to the site of the accident, based upon the progress of the job at that point.

He testified that he also set up vertical panels with posts, which had reflective tape to catch motorists' attention. He billed for the lost salvage value of the 340 feet of guardrail taken out by the truck, and he testified that his company could keep the guardrails which they dismantled and resell them if they were in good condition.

On cross-examination, Potter admitted that his company owned most of the concrete barriers that he used at the accident site, and that the State had contracted to pay his company for the concrete barrier rails at $12.00 per square foot. He admitted that the vertical panels for which he invoiced Crete at $40.00 each were owned by his company, and that the State also paid $20.00 each for these. He further testified that most of the orange barrels were rented, and that the State had paid him for 518 barrels at $45.00 each. He explained the $1,600.00 amount for "traffic control supervisor-labor and equipment" was for him and the use of his pick-up truck. He was questioned regarding the 20% "fringes" number, and he replied that this was "a common practice for additional work", and that making the accident site safe took 4 to 6 men away from their regular work for a day and that he was not paid anything extra by the State as a result of the accident.

At the conclusion of the trial, the Trial Court ruled:

I think the Plaintiff is entitled to be reimburse. I think probably the billed amount is excessive. It's hard to come up with a figure. No question that the Plaintiff has lost the guardrail he would have gotten, the 340 feet of used guardrail. If new guardrail runs nine dollars a foot, then used guardrail probably runs maybe four or five dollars a foot when there's certain opportunities to sell it. I will set the damages in this at

11 thousand, plus four dollars a foot on the used guardrail.  That would be $1,360; plus $2,000 for overhead expenses and supervision.

The Trial Court further explained:

The 11 thousand dollars covers the vertical posts and moving the barriers in there, and they have got to be moved out again.  Plus $1,360 for loss of guardrail, plus $2,000 for supervision and expenses.

Plaintiff's counsel then asked for pre-judgment interest which the Court refused to award.

The standard of review is *de novo* with a presumption of correctness of the trial court's findings of fact, unless the evidence preponderates otherwise.  Tenn. R. App. P. 13(d); *McCarty v. McCarty*, 863 S.W.2d 716 (Tenn. Ct. App. 1992).  No presumption of correctness attaches to the trial court's legal conclusions.  *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87 (Tenn. 1993).

As we have previously explained:

The award of compensatory damages is reviewed with the presumption that it is correct and will only be set aside if the evidence preponderates against it or the trial court used the wrong measure of damages.  *Beaty v. McGraw*, 15 S.W.3d 819, 829 (Tenn. Ct. App.1998). . . . Moreover, while an award of compensatory damages must be based on reasonable certainty, it does not require mathematical certainty.

*Wright Medical Technology, Inc. v. Grisoni*, 135 S.W.3d 561, 595 (Tenn. Ct. App. 2001).

Appellants argue that the damages claimed by plaintiff were too speculative and uncertain to support the Trial Court's award.  However, a trial court's award will be set aside if it is against the preponderance of the evidence.

Potter testified that he was seeking payment for the price of concrete barriers, vertical posts, and orange barrels which were used to "safen up" the accident site.  Defendants however, point to the undisputed proof that the State had already paid for these items, and that plaintiff used some of his own items at no additional out-of-pocket expense to the plaintiff.  Defendants argued this point strenuously in their brief and state: "the State paid plaintiff for the plastic barrels, concrete barriers and sign panels plaintiff used."  While this is true, a collateral source rule which has long been adopted in Tennessee, denies the defendants any credit for such payments. The collateral source rule is a substantive rule of law that bars a tortfeasor from reducing damages owed to plaintiff by an amount the plaintiff received from sources that are collateral to the tortfeasor.  *Jackson v. City of Cookeville,* 31 F.3d 1354, CA 6 (Tenn. 1994)*; Frye v. Kennedy,* 991 S.W.2d 754 (Tenn. Ct. App. 1998); *Steele v. Fort Sanders Anesthesia Group, P.C.,* 897 S.W.2d 270 (Tenn. Ct. App. 1994).

In this case the existence of damages is certain. There is no dispute that the guard rail was destroyed and had to be replaced and that in the interim safety measures had to be taken until the rail was replaced. Generally, damages from tortious conduct cannot be established with mathematical certainty, which the Trial Judge took into account in this case, and he substantially reduced the amount of damages claimed by plaintiff as a result of these uncertainties. *See, Stevens v. Moore*, 139 S.W.2d 710, 179 (Tenn. Ct. App. 1940); *Western Sizzler, Inc. v. Harry*, 741 S.W.2d 334, 336 (Tenn. Ct. App. 1987).

On this record, we cannot say the evidence preponderates against the Trial Court's factual determination of damages. Tenn. R. App. P. 13(d).

Finally, appellee asks this Court to reverse the Trial Court's refusal to award pre-judgment interest. We find this issue to be without merit.

We affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to Clarence D. Cupples, and Crete Carrier Corporation.

_____
HERSCHEL PICKENS FRANKS, P.J.