IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 20, 2006 Session


STATE OF TENNESSEE, DEPARTMENT OF CHILDREN'S SERVICES v.
R.R.'s, IN THE MATTER OF: R.R. JR., (dob 11/17/01), K.P., (dob 04/26/00),
and R.C., (dob 07/16/96), CHILDREN UNDER 18 YEARS OF AGE


Direct Appeal from the Juvenile Court for Hamblen County
Nos. 13104, 13105, 12017    Hon. Mindy N. Seals, Judge


No. E2006-02785-COA-R3-PT -  FILED NOVEMBER 29, 2006


Both parents appeal the Trial Court's termination of their parental rights. We hold the State established by clear and convincing evidence statutory grounds for terminations, and the terminations were in the children's best interests.


**Tenn. R. App. P.3 Appeal as of Right; Judgments of the Juvenile Court Affirmed.**


HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., and SHARON G. LEE, J., joined.

J. Eric Harrison, Morristown, Tennessee, for appellant.

Paul G. Summers, Attorney General and Reporter, and Amy T. Master, Assistant Attorney General, Nashville, Tennessee, for appellee.


**OPINION**


        On January 11 and 17, 2006, the Hamblen County Juvenile Court entered Orders terminating the parental rights of R.R. and R.R. and awarding control and guardianship of the three minor children to the Department of Children's Services ("DCS"). Both parents have appealed.

The following is a summary of the issues raised on appeal by the parents:

Whether the Juvenile Court abused its discretion in refusing to admit an evidentiary deposition?

Whether there was clear and convincing evidence of a statutory ground for termination?

Whether DCS utilized reasonable efforts to reunify the mother with her children and the father with his son?

Whether there was clear and convincing evidence that termination of parental rights is in the children's the best interests?

When terminating parental rights, courts are required to "enter an order that makes specific findings of fact and conclusions of law." T.C.A. § 36-1-113(k) (2005). We review specific findings of fact *de novo* with a presumption of their correctness unless the evidence preponderates to the contrary. Tenn. R. App. P. 13(d); *In re Valentine*, 79 S.W.3d at 546–49. We "must determine whether the facts, either as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements required to terminate a biological parent's parental rights." *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005); *see also In re Valentine*, 79 S.W.3d at 546–49. The trial court's conclusions of law are reviewed *de novo* with no presumption of correctness. *State Dep't of Children's Servs. v. A.M.H.*, 198 S.W.3d 757, 761 (Tenn. Ct. App. 2006) at 762.

Both parents argue that the Juvenile Court erred in refusing to admit into evidence the deposition for proof of Dr. Cleland Blake, M.D. The father's counsel attempted to admit Dr. Blake's testimony in order to prove that R.R. Jr. and K.C.P. were never sexually abused. The Trial Court denied the request "based upon the fact that the court had found at the [prior] adjudicatory hearing that the two children had been sexually abused."

Admission of evidence is entrusted to the sound discretion of the trial court, and a trial court's ruling on evidence will be disturbed only upon a clear showing of abuse of discretion. A trial court's exercise of discretion will not be reversed on appeal unless the court "applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining."

*State v. Robinson*, 146 S.W.3d 469, 490 (Tenn. 2004) (quoting *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn.1997)) (citation omitted).

The State counters that the doctrine of collateral estoppel bars consideration of whether the children suffered sexual abuse because the Juvenile Court previously ruled at the adjudicatory hearing that R.R. Jr. and K.C.P. both suffered sexual abuse. The parents argue that

collateral estoppel does not apply because the prior adjudicatory hearing was not a final order.

The Juvenile Court's order, resulting from the adjudicatory hearing, finding that the children were dependent and neglected and that R.R. Jr. and K.C.P. were sexually abused was a final order and was appealable as of right. T.C.A. § 37-1-159(a) (2005); Tenn. R. Juv. P. 36. The parents did not appeal that order, and we hold that they are bared from raising this issue. The Juvenile Court did not abuse its discretion. *See Massengill v. Scott*, 738 S.W.2d 629, 631 (Tenn. 1987); *Beaty v. McGraw,* 15 S.W.3d 819, 824 (Tenn. Ct. App. 1998).

The Juvenile Court found clear and convincing evidence of two statutory grounds for termination of the parents' parental rights, i.e., the parents' substantial non-compliance with the permanency plan and that the children had been removed for more than six months, the conditions requiring removal still persisted and would not likely be remedied in the near future, and continuation of the parent–child relationship diminished the children's chances for integration into a permanent home. *See* T.C.A. § 36-1-113(g)(2)–(3). Both parents deny that such evidence exists.

"[S]ubstantial noncompliance by a parent or guardian with the statement of responsibilities in a permanency plan or a plan of care pursuant to the provisions of title 37, chapter 2, part 4" is a ground for terminating parental rights. T.C.A. § 36-1-113(g)(2) (2005). This statutory ground requires a two prong analysis. First, the court "must find that the requirements of a permanency plan are 'reasonable and related to remedying the conditions which necessitate foster care placement.'" *In re Valentine*, 79 S.W.3d 539, 547 (Tenn. 2002) (quoting T.C.A. § 37-2-403(a)(2)(C)). Second, the court must find "that the parent's noncompliance is substantial in light of the degree of noncompliance and the importance of the particular requirement that has not been met." *In re M.J.B.*, 140 S.W.3d 643, 656 (Tenn. Ct. App. 2004).

After the adjudicatory hearing in April 2003, the Juvenile Court issued findings of fact listing the conditions which necessitated placement of the children with DCS. The Court found that the father had previously assaulted the mother and hit and struck K.C.P., the parents had allowed the children to be kept by relatives who were suspected sexual perpetrators, R.R. Jr. and K.C.P. had been sexually abused. The father had a history of DUI convictions, and the parents had no stable, appropriate housing. The parents did not seek medical care for their children in a timely manner, the children "were filthy when taken into care" and did not have appropriate shoes. Finally, the "mother ha[d] no concept of budgeting money."

DCS prepared three sets of permanency plans imposing responsibilities upon the parents, directed toward remedying these conditions. The parents argue that only the most recent plans should be examined. When facing various permanency plans, this Court examines those requirements which are consistently present in the various plans. *See In re M.J.B.*, 140 S.W.3d at 646–48, 657.

The permanency plans consistently required the mother to provide a safe home and

environment for the children by ensuring that no one living in or visiting the home would pose a threat of harm, participate in therapy to address her pattern of unstable relationships with inappropriate men and her history of abuse and domestic violence; demonstrate improved parenting skills; and improve her finances and maintain stable, appropriate family housing.

On appeal, the mother argues that only the last of these requirements is relevant because this was the "only ground[] for lack of substantial compliance stated in the petition [to terminate parental rights]" and the petition was never amended. A review of the mother's Answer to the petition and closing argument reveals that she made no objection to this alleged deficiency in the petition prior to the appeal. "It is well-settled that issues not raised at trial may not be raised for the first time on appeal." *State Dept. of Human Servs. v. Defriece*, 937 S.W.2d 954, 960 (Tenn. Ct. App. 1996). Assuming *arguendo* that this issue was properly raised before the Trial Court, the petition clearly alleges that the mother failed to comply with the permanency plan requirements in general. The subsequent, specific discussion of the mother's financial management responsibilities did not narrow the grounds for substantial noncompliance, but was intended only as an illustrative example of the mother's failures.

As to the mother's responsibility to provide for her children's safety, she testified that she understood the importance of keeping physically or sexually abusive individuals away from her children. Yet, she admitted that while her children were in DCS custody she continued a relationship with a boyfriend despite warnings from DCS that he was a suspected sexual perpetrator. She testified that she did not believe DCS and that she did not end the relationship until she discovered that he was having a relationship with another woman. According to one of the mother's parenting counselors, the mother allowed this boyfriend to purchase Christmas presents for the children, and such conduct does not comply with the mother's responsibility to provide a safe environment for the children by ensuring that no one living in or visiting the home would pose a threat of harm.

A consistent theme in the permanency plans was that the mother was to attend counseling to address, among other issues, her pattern of unstable relationships with inappropriate men and her history of abuse and domestic violence. The plans also required her to follow the recommendations of her counselor. Her counselor recommended that she attend two sessions per month, but at the termination hearing, the mother admitted that during the year prior to the hearing she had attended only 5 of 24 scheduled counseling sessions. This conduct is not compliant with the mother's responsibility to address her history of abuse and domestic violence.

The plans also required the mother to demonstrate improved parenting skills, actively participate in parenting training, and attend the children's appointments. The evidence established that the mother had difficulty supervising the children, and that her counselors testified that the mother showed inconsistent improvement in her parenting skills because she would not retain what she was taught. She would improve in one area for a period of time, but would eventually revert back to her previous habits. The evidence establishes that during the ten months preceding the termination hearing, the mother failed to attend 8 out of 18 scheduled parenting skills classes, and she failed to attend numerous children's school meetings and doctors appointments. The evidence

-4-

is clear and convincing that the mother failed to demonstrate the ability to provide a safe environment for the children, failed to participate in therapy to address her pattern of unstable relationships with inappropriate men, and failed to demonstrate improved parenting skills. The mother's failure to satisfy these essential requirements constitutes clear and convincing evidence that she was in substantial noncompliance with the responsibilities in the permanency plans for purposes of T.C.A. § 36-1-113(c), (g)(2).

The permanency plans consistently required the father to refrain from abusing alcohol and using illegal drugs, attend counseling to address anger management and domestic violence issues, demonstrate improved parenting skills, and obtain safe, appropriate housing for himself and his son. These requirements relate to the conditions which necessitated placement of R.R. Jr. with DCS, and they are reasonable prerequisites for reunifying the father with his son.

Between the filing of the petition to terminate the father's parental rights and the termination hearing, the father was convicted of public intoxication on four separate occasions. Two of these arrests occurred on two consecutive days, and at the termination hearing, the father testified he could not remember these arrests and explained that he "must have been really out of it or something." He further testified that he did not have a drinking problem and that he would have to be arrested for public intoxication about 24 to 30 times before he would believe he had a problem. The permanency plans required the father to refrain from using illegal drugs, but he only testified that he had not used marijuana in the two or three months preceding the hearing. He admitted that he refused to sign a release that would provide DCS with access to his alcohol and drug assessment, and it is clear that the father has not complied with his responsibility to refrain from alcohol and drug abuse.

The plans required the father to attend counseling to address anger management and domestic violence issues, yet he did not begin counseling until one or two months prior to the termination hearing, and he did not attend any sessions during the three weeks prior to the hearing. His minimal attendance is evidenced by the fact that he could not remember his therapist's name. The evidence demonstrates that the father did not establish a lifestyle free of drugs and alcohol abuse, he failed to address his issues with anger management and domestic violence, failed to demonstrate improving parenting skills, and failed to obtain safe, appropriate housing for himself and his son. The foregoing constitutes clear and convincing evidence that the father was in substantial noncompliance with the responsibilities in the permanency plans for purposes of T.C.A. § 36-1-113(c), (g)(2). Moreover, there is clear and convincing evidence of the persistency of these conditions.

Both parents argue that DCS failed to utilize reasonable efforts to reunify the family. The Juvenile Court found that DCS did utilize reasonable efforts. In a termination proceeding, this issue is best addressed within the framework of T.C.A. § 36-1-113(i)(2). *See In re A.W.*, 114 S.W.3d 541, 545 (Tenn. Ct. App. 2003); *State Dep't of Children's Servs. v. Malone*, No. 03A01-9706-JV-00224, 1998 WL 46461, at *1 (Tenn. Ct. App. Feb. 5, 1998). Within this framework, whether DCS utilized reasonable efforts is only one of many factors the court must

consider in the best interests analysis. T.C.A. § 36-1-113(i). The statute requires "reasonable efforts" not herculean efforts. *Malone*, 1998 WL 46461, at *2.

The record established, that as the needs of the mother and her children evolved, DCS modified the permanency plans on two separate occasions, and arranged for counseling to address domestic violence, parenting skills, decision making, and other issues. Through these efforts, the mother received 32 counseling sessions, although more than this number were made available to her. DCS arranged for the mother individualized parenting skills training, budgeting, and how to maintain a clean safe home. Numerous hours were spent with the mother by the instructor, and the evidence clearly supports that DCS made reasonable efforts to reunite the family.

As to the father, DCS began its efforts with an initial set of permanency plans and provided the father with individualized parenting skills training similar to that provided to the mother. Considerable time was spent with the father getting visitation with his son, and parental training was available to the father every other week.

Specifically, the father argues that DCS failed to utilize reasonable efforts when it refused to grant the father in-home visitations with his son. The record established that DCS refused in-home visitations because it suspected the father to be a sexual perpetrator, and the father's home is immediately adjacent to his father's house, and the father himself suspects his father is capable of abuse. We conclude that the evidence does not preponderate against the Juvenile Court's specific finding that DCS utilized reasonable efforts to reunify the father with his son.

We find there is clear and convincing evidence that the termination of parental rights of both parents was in the children's best interest. The evidence establishes that the mother had recently been romantically involved with a suspected sexual predator, and was arrested for assault a week prior to the termination hearing. The psychological evaluation of the mother indicated that she has "borderline intellectual functioning" and probably has a "dependent personality disorder." The evidence is clear and convincing that termination of the mother's parental rights is in the best interest of the children for purposes of T.C.A. § 36-1-113(c)(2).

Like the mother, the father's substantial nonconformance with the requirements in his permanency plans evidence his failure to make a sufficient adjustment of "circumstance, conduct, or conditions." *See* T.C.A. § 36-1-113(i)(1). This establishes that the father lacks appropriate parenting skills, and abuses alcohol and illegal drugs. Returning R.R. Jr. to the father's custody would have a detrimental effect on R.R. Jr.'s emotional and psychological condition. *See* T.C.A. § 36-1-113(i)(5). Despite the father's suspicions that his father was abusive, the father continues to live in a poorly maintained, one-bedroom home immediately adjacent to his father's residence. The foregoing constitutes clear and convincing evidence that termination of the father's parental rights would be in the best interests of the child for purposes of T.C.A. § 36-1-113(c)(2).

The Juvenile Court's orders terminating the parental rights of the parents is affirmed, and the cause remanded, with the cost assessed equally to the two parents.

_____
HERSCHEL PICKENS FRANKS, P.J.