# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### November 17, 2009 Session

## STATE OF TENNESSEE v. HAVIN HAMEED

**Interlocutory Appeal from the Criminal Court for Davidson County**
**No. 2006-A-409      Monte D. Watkins, Judge**

---

**No. M2009-00152-CCA-R9-CD - Filed September 15, 2010**

---

Defendant-Appellant, Havin Hameed, was indicted in the Davidson County Criminal Court for two counts of aggravated child abuse and two counts of aggravated child neglect, Class A felonies, that were associated with leg and wrist fractures sustained by Hameed's ten-month-old daughter from September 1, 2004, to October 1, 2004. Prior to Hameed's indictment, the Davidson County Juvenile Court made a factual finding in a dependent and neglect hearing that there was no clear and convincing evidence that Hameed perpetrated the aforementioned injuries against her daughter. Hameed filed a motion to dismiss the indictment in criminal court, which was denied. The criminal court granted permission for an interlocutory appeal and this court subsequently granted Hameed's application to appeal under Rule 9 of the Tennessee Rules of Appellate Procedure. On appeal, Hameed argues that the criminal court erred in failing to dismiss her indictment based on the doctrines of collateral estoppel, res judicata, and double jeopardy after identical allegations between the same parties were dismissed following a trial in juvenile court. Upon review, we affirm the judgment of the Davidson County Criminal Court denying Hameed's motion to dismiss her indictment.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JERRY L. SMITH and THOMAS T. WOODALL, JJ., joined.

Robert L. Tennent, Nashville, Tennessee, for the Defendant-Appellant, Havin Hameed.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy E. Wilber, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Brian K. Holmgren, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

## FACTS AND PROCEDURAL HISTORY

This case concerns the alleged physical abuse of D.G., a ten-month-old girl, who sustained a fracture to her leg while being cared for by her mother, Hameed, at their home. A skeletal survey ordered the same day as the leg injury revealed that D.G. had also sustained a wrist fracture that was more than one week old. At the time of these injuries, Hameed was D.G.'s primary caregiver.

**Factual Background.** On October 1, 2004, Hameed brought D.G. to the Vanderbilt walk-in clinic. Hameed stated that she and D.G. were in their home alone and she was in the kitchen when she heard D.G. crying. She found D.G. at the bottom of the stairs. The child's right leg was "slightly distorted" under her body. After her attempts to comfort D.G. failed, Hameed called her cousin, Reijin Tayar, a medical assistant at Vanderbilt Hospital, who told her to give the child "another dose of Tylenol." D.G. had apparently been "feverish and crying a lot since Monday when she received her ten month Booster shot." When the Tylenol failed to calm D.G., Hameed called her cousin Tayar again. Tayar told Hameed to bring the child to the Vanderbilt walk-in clinic to be examined. Upon D.G.'s examination at the walk-in clinic, an x-ray of the child's leg was taken. Dr. Shelia Stein read the x-ray and determined that D.G. had a fracture of her "right distal femur." The clinic then transferred D.G. to the emergency room at the Vanderbilt Children's Hospital for additional treatment.

Dr. Truc Le, the physician in charge of D.G.'s care in the emergency room said that the child's leg fracture was unusual and suspicious because of D.G.'s age and the fact that she was not yet walking. Dr. McMorrow performed a full skeletal survey on D.G., which revealed a fracture on her right wrist that was in the process of healing in addition to her leg fracture. Dr. Shelia Stein, who read the skeletal survey, determined that the healing wrist fracture was more than one week old. Dr. Stein concluded that D.G. had "two fractures of different ages [which was] consistent with non-accidental trauma." In addition, Dr. Le opined that the wrist fracture could not have happened the same day as the leg fracture and had to be at least a few days old. D.G. was placed in a full arm and wrist cast for her healing wrist fracture and was placed in a Hip Spica cast that covered two-thirds of her body for her leg fracture.

After learning of the second fracture on D.G.'s wrist, Dr. McMorrow contacted Ms. Cindy Miller, the social worker at Vanderbilt's Children's Hospital. Ms. Miller then contacted the Department of Children's Services Child Abuse Hotline to make a referral.

D.G. was not admitted to the Vanderbilt Children's Hospital after receiving her two casts. Instead, she stayed the evening at the pediatric emergency department of the hospital and was discharged to a foster family for a period of time before a paternal uncle was given

temporary custody of her. D.G.'s father was later given custody, with the condition that Hameed could not be with D.G. unsupervised.

Hameed told the case manager for the Department of Children's Services that two or three hours passed before she brought D.G. to the clinic. However, she told Detective Curtis that only one hour passed between the time of the incident and the time she brought D.G. to the emergency room, where she waited approximately two hours before D.G. was examined. When the case manager asked Hameed about D.G.'s wrist fracture, Hameed told her that she did not know about the fracture and did not know how it occurred. Hameed's husband also did not know the cause of the wrist fracture.

D.G. was later seen by Dr. Greg Mencio, a pediatric orthopedist. Dr. Mencio removed her casts and took x-rays which indicated that both fractures were healing well. The radiologist reading the x-rays also determined that D.G.'s bones "appear[ed] normal in their mineralization and in their structure and that there was no Wormian bone identified."

Detective Melvin Curtis talked to Hameed following D.G.'s treatment at the Vanderbilt Children's Hospital. He examined the stairs where D.G. was allegedly injured and determined that the home was "neat with no obvious safety hazards." Detective Curtis also observed that Hameed had purchased two safety gates, one for the top of the stairs and one for the bottom of the stairs. The case manager for the Department of Children's Services also examined the condition of Hameed's home. The case manager determined that the distance from the second step to the floor was approximately three feet. She also noted that Hameed had installed gates at the top and bottom of the stairs as she stated that she would at the hospital after the D.G.'s injury. The case manager also found that the house was "clean [with] no apparent safety hazards."

Dr. Christopher S. Greeley reviewed all of D.G.'s available medical records and wrote a report of his findings. Dr. Greeley determined that D.G. had normal-appearing bones with no abnormalities. He found that the single event of falling down the stairs could not be used to explain both of D.G.'s fractures because of their different ages. Dr. Greeley opined that the wrist fracture appeared to be one to two weeks old at the time of the x-ray at the Vanderbilt Children's Hospital. He also expressed concern that neither Hameed nor anyone else provided an explanation for this fracture. Dr. Greeley stated, "[F]emur fractures in infants in the first year of life are caused by an inflicted injury in approximately 70[%] to 80% of the time" which "would indicate that the majority of femur fractures in infants are the result of actions done to the child by someone with the strength and coordination of an adult." He also was concerned with the delay in seeking medical attention for D.G. Dr. Greeley noted that although the fall occurred at 9:00 a.m., Hameed was not taken to the clinic until 3:35 p.m. that day. Dr. Greeley concluded the following regarding D.G.'s injuries:

-3-

In summary, it is possible that a newly ambulatory child can fall onto an outstretched hand and receive a fracture. That fracture would result in significant discomfort and decreased mobility. It is also possible (but unlikely) that a fall of four feet under the proper biomechanical parameters could result in a femur fracture, but the constellation of a history of a trivial event resulting in a fracture of a major bone and subsequently finding an occult, older fracture is quite concerning. It is impossible in this situation to exclude abuse. It is possible, albeit less likely, that two separate accidental falls could account for both of these injuries. That being said, the clinical scenario (a child with normal bones having two fractures in various stages of healing absent two well-documented traumatic events) is more consistent with these being the result of a series of inflicted events[,] but [the clinical scenario where these fractures were] the result of a series of accidental events can not [sic] be definitively excluded.

**Procedural History.** On October 4, 2004, the Tennessee Department of Children's Services filed a Petition for Custody with Request for Emergency Removal in the Juvenile Court of Davidson County asserting that the victim was a "dependent and neglected child" pursuant to Tennessee Code Annotated sections 37-1-102(b)(12)(B), (F), and (G). The petition also claimed that the abuse sustained by D.G. constituted severe abuse pursuant to section 37-1-102(b)(21) and that the alleged perpetrators of D.G.'s abuse that resulted in the leg and wrist fractures were D.G.'s mother, Hameed, and D.G.'s father. The petition asserted that it was in the best interest of D.G. and the public for temporary custody of the victim to be awarded to the Tennessee Department of Children's Services or an appropriate relative.

Section 37-1-102(b)(12) in pertinent part defines a "defendant and neglected child" for the purposes of the juvenile court as a child:

(B) Whose parent, guardian or person with whom the child lives, by reason of cruelty, mental incapacity, immorality or depravity is unfit to properly care for such child;

. . . .

(F) Who is in such condition of want or suffering or is under such improper guardianship or control as to injure or endanger the morals or health of such child or others;

(G) Who is suffering from abuse or neglect[.]

T.C.A. § 37-1-102(b)(12) (Supp. 2002).

In addition, section 37-1-102(b)(21) defines "severe child abuse" within the context of juvenile court as:

(A) The knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause great bodily harm or death and the knowing use of force on a child that is likely to cause great bodily harm or death;

(B) Specific brutality, abuse or neglect towards a child which in the opinion of qualified experts has caused or will reasonably be expected to produce severe psychosis, severe neurotic disorder, severe depression, severe developmental delay or retardation, or severe impairment of the child's ability to function adequately in the child's environment, and the knowing failure to protect a child from such conduct;

(C) The commission of any act towards the child prohibited by §§ 39-13-502–39-13-504, 39-13-522, 39-15-302, and 39-17-1005 or the knowing failure to protect the child from the commission of any such act towards the child; or

(D) Knowingly allowing a child to be present within a structure where the act of creating methamphetamine, as that substance is identified in § 39-17-408(d)(2), is occurring.

T.C.A. § 37-1-102(b)(21) (Supp. 2002).

Finally, section 37-1-102(b)(1) defines "abuse" within the context of the juvenile court:

"Abuse" exists when a person under the age of eighteen (18) is suffering from, has sustained, or may be in immediate danger of suffering from or sustaining a wound, injury, disability or physical or mental condition caused by brutality, neglect or other actions or inactions of a parent, relative, guardian or caretaker.

T.C.A. § 37-1-102(b)(1) (Supp. 2002).

Following an October 6, 2005 trial in the Davidson County Juvenile Court, the juvenile court referee made the following determination:

-5-

[T]his Court cannot find clear and convincing evidence that Ms. Hameed perpetrated [these injuries] upon her daughter. While the femur fracture certainly occurred while [Hameed] cared for [D.G.], her explanation for the injury is plausible. There is no substantive proof that links her with the wrist fracture other than she is the child's primary caregiver. While concerning, the Court cannot find that probability dictates culpability. Accordingly, the petition is dismissed.

On February 17, 2006, approximately sixteen months after the alleged incident and approximately four months after the dismissal in juvenile court, Hameed was indicted in the the Davidson County Criminal Court for two counts of aggravated child abuse and two counts of aggravated child neglect based on the leg and wrist fractures sustained by D.G.[1] Hameed asserts that she was not served with this indictment until the spring of 2007, approximately one year after the indictment was issued. The record does not explain the delay in the indictment being issued or served.

The criminal offenses of aggravated child abuse and aggravated child neglect are defined by section 39-15-402, in pertinent part:

(a) A person commits the offense of aggravated child abuse or aggravated child neglect who commits the offense of child abuse or neglect as defined in § 39-15-401 and:

(1) The act of abuse or neglect results in serious bodily injury to the child; or

(2) A deadly weapon is used to accomplish the act of abuse.

(b) A violation of this section is a Class B felony; provided, however, that, if the abused or neglected child is six (6) years of age or less, the penalty is a Class A felony.

T.C.A. § 39-15-402(a), (b) (Supp. 2002).

The criminal offense of child abuse and neglect is defined as the following:

---

[1]Hameed's brief notes that pursuant to Rule 7 of the 20th Judicial District Local Rules of the Juvenile Court, audiotapes of juvenile proceedings are to be kept for ninety days, and any request to maintain tapes longer than this deadline must be ordered by the court. Hameed asserts that she was not indicted for the charges in this case until after the ninety-day deadline for maintaining the audiotapes from her juvenile court trial had lapsed.

Any person who knowingly, other than by accidental means, treats a child under eighteen (18) years of age in such a manner as to inflict injury or neglects such a child so as to adversely affect the child's health and welfare commits a Class A misdemeanor; provided, however, that if the abused or neglected child is six (6) years of age or less, the penalty is a Class D felony.

T.C.A. § 39-15-401(a) (Supp. 2002).

On September 15, 2008, Hameed filed a motion to dismiss the indictment based on the doctrines of collateral estoppel, double jeopardy, and res judicata in the Davidson County Criminal Court. Following a hearing, the court denied the motion by written order on November 13, 2008, and made the following findings:

> The Court finds that the Juvenile Court Order regarding dependency and neglect is not a binding preclusive determination on the criminal act of Aggravated Child Abuse and/or Neglect. The Juvenile Court order decided dependency and neglect as it relates to custody of the minor child and not the criminal act of Aggravated Child Abuse and/or Neglect. Thus, the burden of proof enumerated in <u>Beaty v. McGraw</u> which the defendant relies on [has] not been met because the issue sought to be precluded was not identical or decided on by the Juvenile Court. Therefore, the defendant's motion to dismiss the indictment is respectfully DENIED.

Also on November 13, 2008, Hameed filed a motion for permission to appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure in the Davidson County Criminal Court, which was granted on the issue regarding the application of the doctrines of collateral estoppel, res judicata, and double jeopardy but was denied on the issue regarding Hameed's motion to prohibit medical expert testimony. The Tennessee Court of Criminal Appeals subsequently granted Hameed's application for a Rule 9 interlocutory appeal on February 26, 2009, regarding the issue of collateral estoppel, res judicata, and double jeopardy. However, it declined to grant Hameed's application for extraordinary relief under Rule 10 of the Tennessee Rules of Appellate Procedure regarding the trial court's evidentiary ruling to admit the medical expert testimony.

## ANALYSIS

Hameed contends that the indictment charging her with two counts of aggravated child abuse and two counts of aggravated child neglect must be dismissed based on the doctrines of collateral estoppel and res judicata because identical allegations involving the same parties were dismissed following a juvenile court trial. Although she argues in her brief

that her indictment should also be dismissed based on the doctrine of double jeopardy, defense counsel conceded during oral argument before this court that double jeopardy does not provide relief for Hameed in this case. Therefore, our opinion will be limited to whether the doctrines of collateral estoppel and res judicata require dismissal of Hameed's indictment.

The State contends that the trial court properly determined that the doctrines of collateral estoppel and res judicata do not apply to this case. Specifically, the State asserts that collateral estoppel is not applicable to this case because the juvenile court determined the issue of D.G.'s custody rather than the issue of whether Hameed committed the criminal offenses of aggravated child abuse and neglect against D.G. In addition, the State asserts that the doctrine of res judicata does not apply to this case because res judicata requires concurrent jurisdiction between courts of competent jurisdiction and the juvenile court does not have concurrent jurisdiction with the criminal court.

Importantly, we note that on July 23, 2009, in State v. Marcie Lynn Pursell, No. M2008-01625-CCA-R9-CD, 2009 WL 2216562 (Tenn. Crim. App., at Nashville, July 23, 2009), perm. to appeal denied (Tenn. Jan. 25, 2010), this court decided a case nearly identical to Hameed's case. In Marcie Lynn Pursell this court considered the issue of "whether the doctrine of collateral estoppel acts to bar the relitigation of a factual finding in a juvenile dependency proceeding in a subsequent criminal trial." Id. at *4. At the time that this opinion was decided, the court acknowledged that this issue appeared to be a matter of first impression in Tennessee. See id. Notably, the Marcie Lynn Pursell case was decided by this court during the pendency of Hameed's Rule 9 interlocutory appeal. In fact, the opinion was issued approximately one-and-a-half months after the filing of Hameed's appellate brief and one day prior to the filing of the State's appellate brief in this case. We conclude that Marcie Lynn Pursell is determinative of the issues in Hameed's case; thus, a full analysis of that case is appropriate.

In Marcie Lynn Pursell, the defendant was indicted for three counts of aggravated child abuse in the Davidson County Criminal Court after fractures to her infant son's ribs, leg, and arm were discovered. See id. Subsequently, the Tennessee Department of Children's Services filed a Petition for Custody with Request for Emergency Removal and Request to Set Child Support in the Davidson County Juvenile Court against the defendant in order to declare that the defendant's son, J.P., was a "dependent and neglected child" pursuant to Tennessee Code Annotated section 37-1-102(b)(12)(B), (F), and (G) because of the severe child abuse he had sustained. See id. The juvenile court subsequently made a factual finding that although the State had asserted that J.P.'s injuries were the result of "non-accidental trauma," the defense had "demonstrated other alternative theories that the injuries could have resulted from metabolic bone disease, vitamin deficiencies, or iatrogenic injuries." Id. at *2. Ultimately, the juvenile court found that there was no evidence that the

defendant was aware of or had any reason to know of the injuries that J.P. sustained. See id. Following this hearing, the juvenile court "re-instituted" visitation between the defendant and J.P., and there was no appeal of the juvenile court order. Id. Approximately one month after entry of the juvenile court order, the defendant filed a motion in the criminal court to dismiss the indictment charging her with three counts of aggravated child abuse based on the doctrines of "res judicata and collateral estoppel, an element of double jeopardy as protected by the Fifth Amendment of the United States Constitution." Id. Following a hearing, the criminal court denied this motion. See id. Regarding the applicability of the doctrine of collateral estoppel, the criminal court found that the juvenile court was not a court of "competent jurisdiction" because the juvenile court did not have the authority to adjudicate a criminal charge of aggravated child abuse and, therefore, the juvenile court's findings were not "entitled to issue-preclusive effect." Id. Regarding the applicability of res judicata, the criminal court noted that the juvenile court and the criminal court were not courts of concurrent jurisdiction over the criminal offense of aggravated child abuse and found that the juvenile court order was not entitled to "claim-preclusive effect over the criminal court." Id. The defendant was then granted a Rule 9 interlocutory appeal regarding the application of the doctrines of collateral estoppel and res judicata to the case. Id.

On appeal, the Marcie Lynn Pursell court compared the doctrines of collateral estoppel and res judicata:

> In Massengill v. Scott, 738 S.W.2d 629 (Tenn. 1987), our supreme court summarized the related doctrines of res judicata and collateral estoppel:
>
> . . . .
>
> Res judicata bars a second suit between the same parties and their privies on the same cause of action as to all issues which were or could have been litigated in the former suit. Collateral estoppel operates to bar a second suit between the same parties and their privies on a different cause of action only as to issues which were actually litigated and determined in the former suit. To support a plea of res judicata, it must be shown that the judgment in the prior case was final and concluded the rights of the party against whom it is asserted. It is also necessary to show that both cases involved the same cause of action. To sustain a plea of collateral estoppel it must be shown, inter alia, that the issue sought to be concluded not only was litigated in the prior suit but was necessary to the judgment in that suit.

738 S.W.2d at 631-32 (quoting 22 Tenn. Jur. pp. 111-12).

Id. at *3. The Marcie Lynn Pursell court then emphasized that the defendant has the burden of showing that the issue he or she seeks to preclude was fully decided in the previous proceeding:

> The burden is on the defendant to demonstrate that the issue he seeks to foreclose from consideration was necessarily decided in the first trial. Dowling v. United States, 493 U.S. 342, 350 (1990); see also State v. Vickers, 985 S.W.2d 1, 7-8 (Tenn. Crim. App. 1997) ("[T]he burden is on the appellant to prove by clear and convincing evidence that, in the earlier trial, the court or a jury necessarily decided the issue of fact which is an element at issue in the present indictment.") (emphasis in original) (citations omitted). To determine whether a defendant has met this burden, a court must examine the record of the first trial, "taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." Ashe [v. Swenson], 397 U.S. [436,] 444 [(1970)] (footnote and internal quotation marks omitted).

Id. at *4.

Marcie Lynn Pursell then looked to the Illinois case of People v. Moreno, 744 N.E.2d 906 (2001), for guidance on whether a juvenile court judgment precluded a criminal prosecution based on the same facts:

> An Illinois appellate court, in People v. Moreno, 744 N.E.2d 906 (2001), held that collateral estoppel did not bar a criminal prosecution against the defendant for aggravated battery of a child even though every factual issue to be tried was resolved in the Defendant's favor in a prior wardship proceeding in juvenile court. 744 N.E.2d at 912. In Moreno, the State filed juvenile wardship petitions alleging the defendant's four children were abused. Id. at 907. The State also charged the defendant with aggravated battery of a child. Id. The juvenile and criminal cases were grounded on the defendant's alleged abuse of her seven-month-old nephew, G.M. Id. Following the juvenile adjudicatory hearing, the trial court ruled that the State failed to prove by a preponderance of the evidence that the defendant abused G.M. Id. at 909. The defendant then sought to have the criminal charges dismissed, arguing that the State was collaterally estopped from proceeding in criminal court because

the same factual issues were resolved in her favor in the juvenile proceeding. Id. at 910. The criminal trial court disagreed. Id. On appeal, the Illinois appellate court affirmed, distinguishing juvenile and criminal proceedings and relying on public policy considerations:

> In the juvenile proceeding, the ultimate litigated issue was whether the minor children of defendant were abused due to defendant's involvement with the injuries of G.M.; in the subsequent criminal proceeding, the ultimate litigated issue will be whether the defendant is criminally culpable for the injuries to G.M. In the juvenile proceeding, the State's purpose is protection of defendant's minor children; in the criminal proceeding, the State's purpose is discovering if defendant injured G.M. and punishing her if found guilty. The differences of purpose and goal in the civil and criminal procedures are ["]very real.["]

Id. at 912 (citation omitted). The [Moreno] court also noted that a criminal trial is "the exclusive forum for determining guilt or innocence" and that the State lacked "a full and fair opportunity to litigate" the defendant's criminal culpability in the juvenile proceedings. Id.

Marcie Lynn Pursell, 2009 WL 2216562, at *4-5.

The Marcie Lynn Pursell court then noted with approval the two cases cited in Moreno, People v. Percifull, 12 Cal. 2d 331 (Cal. Ct. App. 1992), review denied (Cal. Nov. 25, 1992), and State v. Cleveland, 794 P.2d 546 (Wash. Ct. App. 1990). It further noted that other states had reviewed similar issues and had reached similar results to those in Moreno, Percifull, and Cleveland and cited as examples Carlene Northcutt v. Commonwealth, No. 2002-CA-000491-MR, 2003 WL 22061637 (Ky. Ct. App. Sept. 5, 2003), discretionary review denied (Ky. March 10, 2004); State v. Chad A. Felter, No. H-99-001, 1999 WL 727096 (Ohio Ct. App. Sept. 17, 1999); People v. Gates, 452 N.W.2d 627 (Mich. 1990); Gregory v. Commonwealth, 610 S.W.2d 598 (Ky. 1980).

After relying on these authorities, the Marcie Lynn Pursell court concluded that the juvenile court judgment did not preclude the State from bringing criminal charges against the defendant:

> Here, the juvenile court action was brought to determine whether J.P. was a dependent and neglected child pursuant to Tennessee Code Annotated

section 37-1-102(b)(12), in that he was allegedly a severely abused child who had not been protected from abuse and who failed to thrive under the care of his mother, the Defendant. Under Tennessee law, in a prosecution for aggravated child abuse and neglect, the State must prove: (1) a defendant knowingly, other than by accidental means, treated a child eight years of age or less, in such a manner as to inflict injury; and (2) the act of abuse resulted in serious bodily injury. See Tenn. Code Ann. §§ 39-15-401(a) & -402(a)(1). One is for the protection of the child, and the other is to punish individuals found guilty of wrongdoing. The importance of the criminal trial process must be preserved. We find the rationale of Moreno and the other cases cited herein persuasive. The juvenile court dependent and neglect proceeding did not have collateral estoppel effect blocking the State from bringing criminal charges against the Defendant. We emphasize that, in the juvenile court proceeding, the Defendant was not being prosecuted for a crime; her freedom was not in jeopardy.

Marcie Lynn Pursell, 2009 WL 2216562, at *6. Although we have previously concluded that Marcie Lynn Pursell is determinative of the issues in the instant case, we will address the arguments raised by Hameed in this appeal.

## I.     The Application of the Doctrines of Collateral Estoppel and Res Judicata.

**A. Collateral Estoppel.** Hameed contends that her indictment should be dismissed pursuant to the doctrine of collateral estoppel based on the test articulated in Beaty v. McGraw, 15 S.W.3d 819, 824 (Tenn. Ct. App. 1998), which states that the party invoking the doctrine of collateral estoppel must establish that: (1) the issue sought to be precluded is identical to the issue decided in the earlier suit; (2) the issue sought to be precluded was actually litigated and decided on its merits in the earlier suit; (3) the judgment in the earlier suit has become final; (4) the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier suit; and (5) the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier suit to litigate the issue now sought to be precluded. Given this court's decision in Marcie Lynn Pursell, we find that application of the test as articulated in Beaty is unnecessary. After applying the rule in Marcie Lynn Pursell that a juvenile court judgment does not preclude the State from bringing criminal charges based on the same conduct, we conclude that the doctrine of collateral estoppel does not bar Hameed's criminal prosecution. See Marcie Lynn Pursell, 2009 WL 2216562, at *6.

Hameed argues that the issue sought to be precluded in the criminal case is identical to the issue decided in the juvenile trial. She asserts that the "factual theory of guilt" asserted

by the State of Tennessee in the criminal case is the same as that presented by the State of Tennessee in the juvenile court case. Specifically, she argues that the allegations in both cases were that she inflicted a leg and wrist fracture on the victim. We disagree. While the sole purpose of the juvenile case was to protect D.G., the sole purpose of the criminal case is to determine whether Hameed committed the criminal offenses of aggravated child abuse and aggravated child neglect against D.G. See Marcie Lynn Pursell, 2009 WL 2216562, at *6. The custody issue regarding the welfare of the child is not identical to the issue regarding whether Hameed committed the criminal offenses of aggravated child abuse and aggravated child neglect.

Hameed cites State of Tennessee, Department of Children's Services v. R.R.'s, No. E2006-02785-COA-R3-PT, 2006 WL 3431938, at *2 (Tenn. Ct. App. Nov. 29, 2006), perm. to appeal denied (Tenn. March 12, 2007), for the rule that final juvenile court judgments are given preclusive effect pursuant to the doctrine of collateral estoppel. However, in R.R.'s, the parents argued that the juvenile court erred in refusing to admit the deposition of a physician who indicated that the children had never been abused. See id. at *1. The juvenile court refused to admit the doctor's deposition because it had already determined in a prior adjudicatory hearing that the two children had been sexually abused. See id. On appeal to the Tennessee Court of Appeals, the State argued that "the doctrine of collateral estoppel bar[red] consideration of whether the children suffered sexual abuse because the Juvenile Court previously ruled at the adjudicatory hearing that [both children] suffered sexual abuse." Id. In response, the parents argued that the prior adjudicatory hearing was not a final judgment. See id. The Tennessee Court of Appeals ultimately held that the juvenile court adjudicatory order that the children were dependent and neglected and that the children had been sexually abused "was a final order and was appealable as of right." Id. at *2 (citing T.C.A. § 37-1-159(a) (2005); Tenn. R. Juv. P. 36). It further held that the parents were barred from raising this issue on direct appeal because they did not appeal the juvenile court order. See id. (citing Massengill, 728 S.W.2d at 631; Beaty, 15 S.W.3d at 824). In R.R.'s, the issue sought to be precluded was identical to the one on appeal and both of the courts were civil courts. However, in the instant case, Hameed argues that the juvenile court's dismissal of the petition for custody precludes her prosecution for the criminal charges of aggravated child abuse and aggravated child neglect. In Hameed's case, the issues as explained above are not identical, and the earlier suit was before a civil court while the later case is pending before the criminal court. Accordingly, Hameed is not entitled to relief based on this argument.

Hameed also cites In re T.H., No. 01-A-01-9412-JV-00600, 1996 WL 165511, at *3 (Tenn. Ct. App. April 10, 1996), for the proposition that criminal convictions for sexual abuse are factually binding and can be used by the juvenile court to terminate rights. In In re T.H., a father argued that the juvenile court in a termination of parental rights proceeding

should not have considered certified copies of the judgments of his criminal convictions which related to the juvenile case because the criminal convictions were on appeal at the time of the juvenile hearing. See id. at *2. The Tennessee Court of Appeals noted that the criminal convictions were relevant in the termination proceeding in juvenile court in light of Tennessee Code Annotated section 37-1-147(d)(3) (1991), which allows a termination of the parental rights of a parent "who has been sentenced to more than two (2) years' imprisonment for conduct which has been or is found to be severe child abuse." Id. at *3. The court ultimately concluded that, pursuant to Tennessee Rule of Evidence 803(22), the juvenile court properly considered the judgments of conviction despite the fact that they were on appeal at the time of the termination proceeding. See id. Because In re T.H. does not involve the issues of collateral estoppel or res judicata, we fail to see how this case is relevant to Hameed's appeal.

Second, Hameed argues that "the issue sought to be precluded, whether [she] is guilty beyond a reasonable doubt of abuse or neglect was previously litigated under a lesser evidentiary standard, more favorable to the State of Tennessee, and [that issue was] decided on its merits in [her] favor." Again, we disagree. As we previously stated, the issue litigated and decided on its merits at the juvenile court trial was whether the victim was a "dependent and neglected child" that needed protection by the State. Because this issue is not the same as the issue sought to be precluded, Hameed has not established that she is entitled to relief on this issue.

Third, Hameed argues that the November 4, 2005 juvenile court judgment of dismissal was final because no appeal was filed and this judgment has preclusive effect on her criminal case. See T.C.A. § 37-1-107; Tenn. R. Juv. P. 4(c); Tenn. R. Juv. P. 36(e). However, because the custody issue litigated and decided on its merits in juvenile court was not identical to the issue of whether Hameed committed the criminal offenses of aggravated child abuse and aggravated child neglect, the finality of the juvenile court judgment has no effect on the criminal prosecution.

Fourth, Hameed argues that the party against whom collateral estoppel is asserted, namely the State of Tennessee, was a party or was in privity to a party from the previous suit, namely the Tennessee Department of Children's Services. Hameed asserts that the State of Tennessee was the captioned party in both the juvenile case and the criminal case. Moreover, she interprets the language in Article I, section 1 of the Tennessee Constitution to mean that "the party in interest to all actions undertaken by the government is actually the people of Tennessee," therefore, she asserts that the people of the State of Tennessee were a party in both the juvenile case and the criminal case. Hameed cites section 37-1-124(b), which states, "The district attorney general or city or county attorney, or any attorney, upon request of the court, shall present the evidence in support of the petition [in juvenile court] and

-14-

otherwise conduct the proceedings on behalf of the state." See Tenn. R. Juv. P. 2(15); see also Tenn. R. Juv. P. 19(c) ("Whenever required by statute or rule, or at his or her discretion, the district attorney general shall appear in the juvenile court and prosecute the complaint on behalf of the State."). In addition, she cites section 40-3-104, which states, "All criminal actions are prosecuted in the name of the state of Tennessee against the party charged with the offense." Therefore, she claims the State of Tennessee "prosecuted" her in both the juvenile case and the criminal case and asserts that "there is plainly common identity of parties." She also argues that, even if the parties were not the same, the Office of the District Attorney General was "in privity" with the Department of Children Services "since each party was prosecuting actions based upon the same alleged wrongful conduct, involving the same alleged victim, claiming the same injuries, claiming the same alleged perpetrator, and relying on the same proof." Regardless of whether the Tennessee Department of Children Services and the Tennessee Office of the District Attorney are at a minimum in privity with one another, any connection between these two entities is meaningless in light of the decision reached in Marcie Lynn Pursell. Because Hameed failed to establish that the issue determined in the prior juvenile case was identical to the issue in the criminal case, she is not entitled to relief on this issue.

Fifth, Hameed argues that the State of Tennessee had a full and fair opportunity to litigate whether she abused or neglected the victim in the juvenile proceeding, which resulted in a dismissal, and therefore, the State should be precluded from litigating this same issue in the criminal case. We disagree. Because the issue in the juvenile proceeding was whether the victim was a "dependent and neglected child" that needed protection by the State, we cannot conclude that the State had a full and fair opportunity to litigate in the juvenile proceeding whether Hameed was guilty beyond a reasonable doubt of committing the criminal offenses. Accordingly, Hameed has not established that the State should be precluded from prosecuting her under the doctrine of collateral estoppel.

**B. Res Judicata.** Hameed alternatively argues that her indictment should be dismissed under the doctrine of res judicata. Specifically, she claims that the juvenile court's dismissal is considered a final judgment rendered upon the merits pursuant to the definition of res judicata as stated in Shelly v. Gipson, 400 S.W.2d 709, 714 (Tenn. 1966): "The doctrine of res judicata is that an existing final judgment rendered upon the merits by a court of competent jurisdiction is conclusive of the rights, questions and facts in issue as to the parties and their privies in the same action in other judicial tribunals of concurrent jurisdiction."

As we discussed above, the juvenile court's dismissal of the petition for custody was not conclusive of the rights, questions, and facts in issue regarding Hameed's criminal prosecution. Moreover, the Davidson County Juvenile Court and the Davidson County

-15-

Criminal Court do not have concurrent jurisdiction. The juvenile court has original jurisdiction to determine whether a child is "dependent and neglected." T.C.A. § 37-1-103(a)(1). In addition, the juvenile court has concurrent jurisdiction with the probate court to determine the custody of a child and has concurrent jurisdiction with the chancery and circuit courts to terminate parental rights. See id. § 37-1-104(a)(2), (c). However, the circuit and criminal courts "have original jurisdiction of all criminal matters not exclusively conferred by law on some other tribunal." Id. § 40-1-108. Because the juvenile court and the criminal court do not have concurrent jurisdiction, Hameed is not entitled to relief under the doctrine of res judicata.

Hameed cites Department of Human Services v. Wanda Lee Tate, No. 01-A-9409-CV-00444, 1995 WL 138858, at *5 (Tenn. Ct. App. Mar. 31, 1995), for the rule that a juvenile court's factual finding has preclusive effect in circuit court. In Wanda Lee Tate, the juvenile court determined that the children were dependent and neglected partially based on its finding of severe child abuse by the defendant. See id. At the circuit court's de novo dependency and neglect hearing, it also found that the defendant had committed severe child abuse. See id. In a later termination proceeding, the circuit court noted in its findings that the defendant failed to appeal its previous finding of severe child abuse and found that the defendant was barred from challenging its prior finding of severe child abuse. See id. On appeal, the Tennessee Court of Appeals concluded that "the circuit court did not err in finding that the doctrine of res judicata barred the defendant from challenging the prior findings of severe child abuse." Id. In Wanda Lee Tate, the issue sought to be precluded was identical to the one on appeal and both the juvenile court and the circuit court were civil courts. This posture varies dramatically from that of the instant case. Here, Hameed argues that the juvenile court's dismissal of the petition for custody precludes her prosecution for the criminal charges of aggravated child abuse and aggravated child neglect. In contrast to Wanda Lee Tate, the issue determined in Hameed's juvenile court case is not identical to the issue in her criminal case. Accordingly, Hameed is not entitled to relief based on this argument.

**II. Application of Collateral Estoppel in North Carolina and California.** Further, citing State v. Summers, 528 S.E.2d 17, 21 (N.C. 2000); People v. Garcia, 141 P.3d 197, 210 (Cal. 2006); and People v. Sims, 651 P.2d 321,334 (Cal. 1982), Hameed argues that the states of North Carolina and California have held that the doctrine of collateral estoppel may preclude criminal prosecutions where an individual has been exonerated in an administrative hearing. In light of this court's decision in Marcie Lynn Pursell, we need not consider how other jurisdictions handle this issue.

**III. Differences in the Burdens of Proof, Elements of the Offenses, and the Lesser Included Offenses.** Hameed attempts to refute several arguments made by the State at the

hearing on her motion to dismiss the indictment. The State first argued at the hearing that the doctrines of collateral estoppel and res judicata were not applicable because the burdens of proof for the criminal offenses and the juvenile charge differed. In response, Hameed claims that because the evidence presented by the State at the juvenile court hearing was insufficient to meet the "clear and convincing" standard required by that court, the State is precluded from attempting to meet the higher standard of "beyond reasonable doubt" required in criminal court. She asserts that both she and the State of Tennessee were parties in the juvenile court case and the criminal court case and that in both of these cases the State was attempting to establish that she abused or neglected D.G. on or before October 1, 2004. Hameed contends that "[i]t is utterly inappropriate and grossly illegal to allow the State of Tennessee a 'do-over' and another try to strip [her] of custody (via a mandatory minimum sentence of fifteen years in prison) with a different expert witness (Dr. Adele Lewis) who is reciting the same argument that previously was found unavailing."

The State also argued at the motion hearing that the doctrines of collateral estoppel and res judicata were not applicable because the elements of the criminal offenses and the juvenile charge were not the same. After acknowledging that the elements of the juvenile offense and the elements of the criminal offense are different in her brief, Hameed contends that although the criminal offense has more elements, the criminal offense includes all of the elements charged in the juvenile case, and both the juvenile case and the criminal case required a finding that the victim was either "abused" or "neglected." She contends that the juvenile court's finding that the victim was not abused or neglected "negates one of the essential elements of all indicted offenses."

The State further argued at the motion hearing that the doctrines of collateral estoppel and res judicata were not applicable because the juvenile offense and the criminal offenses have different lesser included offenses. In response, Hameed argues that she cannot envision a lesser included offense with which she could have been charged that would not have "the same factual predicate found wanting in the Juvenile Court." Although Hameed admits that the State might not have been precluded from charging her with the lesser included offense of assault under sections 39-13-101(a)(2) or (a)(3), neither the element of assault by fear of imminent bodily injury nor the element of assault by offensive or provocative contact are supported by the facts of this case.

We conclude that Hameed's aforementioned arguments are unnecessary to address in light of this court's decision in Marcie Lynn Pursell that a juvenile court judgment does not have preclusive effect on a criminal prosecution based on the same facts. See Marcie Lynn Pursell, 2009 WL 2216562, at *6. Accordingly, we affirm the judgment of the trial court.

**CONCLUSION**

-17-

Upon review, we affirm the judgment of the trial court.


_____
CAMILLE R. McMULLEN, JUDGE